[No. 13323. In Bank. — May 30, 1892.]

# WILBUR F. DOUGHTERTY, RESPONDENT, *v.* JOHN L. AUSTIN, TREASURER OF MARIN COUNTY, ETC., APPELLANT.

CONSTITUTIONAL LAW — PUBLIC OFFICERS — INCREASE OF COMPENSATION — SALARY OF DEPUTY. — An order of the board of supervisors of Marin County, allowing a county clerk a deputy at a salary of fifty dollars a month, to be paid by the county, made on the 10th of January, 1889, and after the election of the county clerk to that office, is in effect an increase of the compensation of such county clerk after his election, and is therefore void, as being in conflict with section 9 of article XI. of the constitution, notwithstanding the amendment of 1887 (Stats. 1887, p. 207) to section 211 of the County Government Act of 1883 purports to authorize the boards of supervisors of certain counties to allow deputies to the county officers on salaries to be paid by the county.

ID.— UNIFORMITY OF OPERATION OF GENERAL LAW — COUNTY GOVERNMENT ACT — AMENDMENT OF 1887. — The provision of section 211 of the County Government Act of 1883, as amended in 1887 (Stats. 1887, p. 207), "that whenever, in the opinion of the board of supervisors, the salary of any county officer in the third, fourth, fifth, twelfth, twentieth [and several

| | |
|---|---|
| 94 | 601 |
| 94 | 603 |
| 95 | 332 |
| 95 | 474 |
| 94 | 601 |
| 97 | 602 |
| 94 | 601 |
| 98 | 221 |
| 94 | 601 |
| 104 | 130 |
| 104 | 645 |
| 94 | 601 |
| 109 | 334 |
| 109 | 497 |
| 94 | 601 |
| 111 | 370 |
| 94 | 601 |
| 113 | 514 |
| 94 | 601 |
| 115 | 550 |
| 94 | 601 |
| 118 | 306 |
| 94 | 601 |
| 119 | 690 |
| 94 | 601 |
| 125 | 193 |
| 94 | 601 |
| 126 | 232 |
| 94 | 601 |
| 135 | 652 |
| 94 | 601 |
| 136 | 378 |
| 136 | 655 |
| 94 | 601 |
| 141 | 397 |
| 141 | 727 |
| 94 | 601 |
| e145 | 197 |
| 145 | 198 |

others] classes as fixed and provided in this act is insufficient to pay a reasonable compensation for the services required to be performed, then said board shall allow such officer a deputy, or such number of deputies as in their judgment may be required to do the business of such office, in connection with the principal, at a salary not to exceed one hundred dollars per month, to be paid at the times and in the manner said principal is paid," is unconstitutional and void, as it prevents the county government act, which is essentially a law of a "general nature," from having a "uniform operation," as required by section 11 of article I. of the constitution.

ID. — DELEGATION OF LEGISLATIVE POWER. — Such provision is also unconstitutional and void, as it is an attempt by the legislature to delegate to the board of supervisors the duty imposed on it by section 5 of article XI. of the constitution, of regulating the compensation of all county officers in proportion to their duties. Such legislative duty cannot be delegated.

APPEAL from a judgment of the Superior Court of Marin County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Carter P. Pomeroy,* and *Frank M. Angellotti,* for Appellant.

The order of the board of supervisors was an increase of the compensation of the county clerk after his election, and in contravention of the constitution. (Const., art. XI., sec. 9.) The amendment of 1887 to section 211 of the County Government Act of 1883, is unconstitutional and void, because it is special legislation regulating county business (Const., art. IV., sec. 25; *Earle* v. *Board of Education,* 55 Cal. 490; *Longan* v. *County of Solano,* 65 Cal. 125; *Miller* v. *Kister,* 68 Cal. 142); because it prevents the County Government Act from having a uniform operation. (Const., art. I., sec. 11; *Brooks* v. *Hyde,* 37 Cal. 375; *Miller* v. *Kister,* 68 Cal. 142; *Pasadena* v. *Stimson,* 91 Cal. 238; *People* v. *Henshaw,* 76 Cal. 444; *People* v. *C. P. R. R. Co.,* 83 Cal. 393; *French* v. *Teschemaker,* 24 Cal. 544; *Manning* v. *Klippel,* 9 Or. 367; *Omnibus R. R. Co.* v. *Baldwin,* 57 Cal. 165; *Ex parte Clancy,* 90 Cal. 553); and because it is an unlawful delegation of the power conferred on the legislature to regulate the compensation of county officers in proportion to

duties. (Const., art. XI., sec. 5; *Farrell* v. *Board of Trustees*, 85 Cal. 408; *Ford* v. *Board*, 81 Cal. 19; *People* v. *Chapman*, 61 Cal. 262; *Harbor Commissioners* v. *Excelsior Redwood Co.*, 88 Cal. 491; Debates of the Constitutional Convention, p. 1049.)

*Hepburn Wilkins, A. A. Moore, James C. Martin,* and *Attorney-General Hart,* and *Works, Gibson & Titus, amici curiæ,* for Respondent.

The amendment of 1887 did not destroy the uniformity of operation of the County Government Act, and is not special legislation. (*Smith* v. *Judge Twelfth Dist.*, 17 Cal. 548; *McGill* v. *State*, 34 Ohio St. 228; *Cody* v. *Murphey*, 89 Cal. 522; *Longan* v. *Solano County*, 65 Cal. 122; *Kirkwood* v. *Soto*, 87 Cal. 394; *People* v. *Henshaw*, 76 Cal. 444; *Thomason* v. *Ashworth*, 73 Cal. 73; *Bishop* v. *City of Oakland*, 58 Cal. 572; *Jenks* v. *City of Oakland*, 58 Cal. 576.)

DE HAVEN, J. — In the former decision of this case (*post,* p. 626), the court, in its opinion, held that the order of the board of supervisors of Marin County, upon which the respondent bases his right to the relief which he asks, was, in effect, an increase of the compensation of the county clerk of Marin County, made after his election to such office, and was for this reason void, as being in conflict with section 9 of article XI. of the constitution of this state; and secondly, that section 211 of the County Government Act, as amended in 1887 (Stats. 1887, p. 207), under which the board of supervisors acted in making such order, was invalid, as it made the County Government Act, of which it formed a part, lacking in that uniformity of operation which is required by section 11 of article I. of the constitution of this state. It being supposed that the decision thus made would affect officers in other counties who had not been heard, and that the question presented for decision was of sufficient importance to justify it, it was deemed proper by a majority of the members of the court to grant a rehearing, in order to give an oppor-

tunity for further argument. The case has been re-argued, and upon a reconsideration of the questions involved, we adhere to the conclusions announced in the former opinion of Mr. Justice Garoutte, and the reasoning by which those conclusions were reached.

There is, however, an additional ground which is equally fatal to the right of respondent to maintain this action, which will be briefly referred to.

The constitution of the state declares: —

"The legislature, by general and uniform laws, shall provide for the election or appointment in the several counties of boards of supervisors, sheriffs, county clerks. . . . . It shall regulate the compensation of all such officers in proportion to duties, and for this purpose may classify the counties by population." (Art. XI., sec. 5.)

Under this section it is made the imperative duty of the legislature to regulate — that is, to fix or adjust — the compensation of all county officers in proportion to their duties.

In the exercise of the authority thus conferred upon it by the constitution, the legislature, in the County Government Act of 1883 (Stats. 1883, p. 299), and the act amendatory thereof, passed in 1885 (Stats. 1885, p. 178), fixed the salary of the county clerk in the class of counties to which Marin belonged at two thousand five hundred dollars per annum, with the special provision that this sum should be in full compensation for that officer, and that all deputies employed by him, and deemed necessary to properly discharge the duties of such office, should be paid by him out of the salary thus fixed by the act. But in 1887, section 211 of the County Government Act was again amended, and by such amendment the legislature undertook to confer upon the supervisors of Marin, and certain other counties, the power to change that provision of the law which required their county officers to pay their own deputies. This amended section, so far as it is necessary to be here set out, is as follows: "That whenever, in the opinion of the board of supervisors, the salary of any

county officer in the third, fourth, . . . . twentieth, . . . .
classes, as fixed and provided in this act, is insufficient
to pay a reasonable compensation for the services re-
quired to be performed, the said board shall allow such
officer a deputy, or such number of deputies as in
their judgment may be required to do the business of
such office, in connection with the principal, at a salary
not to exceed one hundred dollars per month, to be
paid, . . . . provided, that an affidavit shall be filed by
such officer with the said board, showing that such dep-
uty or deputies are required by him in the proper dis-
charge of his duties as such officer." It was under this
section, as thus amended, that the board of supervisors
of Marin County acted in making the order by virtue
of which plaintiff claims the right to be paid his salary
as deputy county clerk from the treasury of the county.

The question is thus squarely presented, whether it
was competent for the legislature thus to delegate to the
board of supervisors of that county the power to change
or suspend that part of the general law fixing the sala-
ries of county officers, which provided that the county
clerk of Marin County should himself pay the deputy or
deputies employed by him. There can be, under well-
settled principles of constitutional law, but one answer
to this question, and that is one which denies to the
legislature any right to thus delegate to any other body
or tribunal what is most clearly a legislative power, the
exercise of which the constitution has confided to that
department of the state alone. This principle is one so
universally accepted as true, that Judge Cooley, in his
work on constitutional limitations, states it as a maxim
of constitutional law. He says: "One of the settled
maxims in constitutional law is, that the power conferred
upon the legislature to make laws cannot be delegated
by that department to any other body or authority.
Where the sovereign power of the state has located the
authority, there it must remain; and by the constitu-
tional agency alone the laws must be made until the con-
stitution is changed. The power to whose judgment,

wisdom, and patriotism this high prerogative has been intrusted cannot relieve itself of the responsibility by choosing other agencies upon which the power shall be devolved, nor can it substitute the judgment, wisdom, and patriotism of any other body for those to which alone the people have seen fit to confide this sovereign trust." (Cooley on Constitutional Limitations, p. 117).

A general statute of the state of Missouri concerning roads and highways contained a provision that "if the county court of any county should be of opinion that the provisions of the act should not be enforced, they might, in their discretion, suspend the operation of the same for any specified length of time, and thereupon the act should become inoperative in such county for the period specified in such order," and in that event, roads in such county should be opened and kept in repair under previous statutes. The supreme court of that state, in *State* v. *Field*, 17 Mo. 529, 59 Am. Dec. 275, held such act unconstitutional, as an attempt to delegate to the county court of the county a power vested exclusively in the legislature.

There is no difference whatever in principle between the statute held invalid in the case just referred to and section 211 of the County Government Act, as amended in 1887, and under which the board of supervisors acted in making the order upon which the plaintiff relies. By this section, as thus amended, an attempt is made to delegate to the board of supervisors of Marin County the authority to change the law fixing the salary of the county clerk of that county, whenever it shall appear to such board that the salary as thus fixed is insufficient to pay him a reasonable compensation for his services. The salary of this officer was fixed by the legislature, with direct reference to the fact that out of it he was to pay his own deputies, and the purpose of this amended section is to authorize the board of supervisors of that county to suspend the operation of this law, in so far as he is thereby required to pay such deputies, and to place that burden upon the county. The power thus to change

a law of the state is necessarily legislative in character, and is vested exclusively in the legislature, and cannot be delegated by it to the board of supervisors of the county. It follows, from this, that the order of the board of supervisors of Marin County, allowing the plaintiff a salary of fifty dollars per month as deputy county clerk of that county, and payable out of the treasury, is void, and plaintiff is not entitled to the judgment which he demands.

As already stated, the constitution of this state has made it the imperative duty of the legislature to fix the salaries of county officers in proportion to their duties. Whether, if that body should wholly fail to discharge this obligation in respect to any county, the board of supervisors of such county would, by virtue of its general authority in relation to the government of such county, have power to provide for the payment of its officers, is a question not involved in this case, and upon which we express no opinion.

Judgment reversed, with directions to dismiss the proceeding.

GAROUTTE, J., HARRISON, J., and SHARPSTEIN, J., concurred.

BEATTY, C. J., concurring. — At the first presentation of this case, I was impressed with the conviction that very serious consequences must flow from any conclusion the court might reach, and have therefore given it the most careful and anxious consideration. It was apparent that so important a provision of the County Government Act as that which is in question here could not be held unconstitutional without producing disorder and confusion in the public business of a number of the most populous counties of the state, besides injuriously affecting the pecuniary interests of the deputy county officers, whose compensation it was intended to secure. It was therefore with great reluctance that I yielded to the conviction that, upon any construction of the proviso

under which the respondent claims, it could not be upheld without disregarding the manifest intention of the constitution. Actuated by the same feeling, I willingly united in the order for a rehearing, hoping that a fuller discussion of the case by additional counsel representing the state and the several counties affected by the decision might lead to the discovery of some happier solution of the difficulty.

I regret to say, however, that after carefully weighing and considering every argument that has been advanced from the beginning to the end of the discussion, the conflict between the act of the legislature and the constitution still seems to me plain and irreconcilable.

Unless by express words declared to be otherwise, every provision of our constitution is mandatory and prohibitory. (Art. I., sec. 22.) Among these mandatory and prohibitory provisions are found the following: Art. XI., sec. 5: "The legislature, by general and uniform laws, shall provide for the election or appointment, in the several counties, of boards of supervisors, sheriffs, county clerks, district attorneys, and such other county, township, and municipal officers as public convenience may require, and shall prescribe their duties, and fix their terms of office. It shall regulate the compensation of all such officers in proportion to duties, and for this purpose may classify the counties by population; and it shall provide for the strict accountability of county and township officers for all fees which may be collected by them, and for all public and municipal moneys which may be paid to them, or officially come into their possession." Art. XI., sec. 9: "The compensation of any county, city, town, or municipal officer shall not be increased after his election, or during his term of office; nor shall the term of any such officer be extended beyond the period for which he is elected or appointed."

It is not denied, and it cannot be, that by section 5 of this article the legislature is commanded to regulate the compensation of all county officers in proportion to duties. A comparison of sections 5 and 9 makes it equally

plain that such regulation must be made to take effect
before the election of the officers whose compensation it
controls, and that it cannot be subsequently changed so
as to increase the compensation of any officer during the
term for which he has .been elected. It may be con-
ceded that to regulate the compensation of an officer
does not necessarily mean to ascertain or fix the exact
amount which he is to receive for discharging all the
duties of his office. Indeed, it seems plain to me that
the legislature might have satisfied this requirement of
our organic law without any classification of counties
according to population, by the simple expedient of
adopting a uniform fee bill, and allowing each county
officer to retain for his compensation all the fees by him
collected,· not exceeding a certain amount, and a per-
centage computed according to a sliding scale, such as
that used in determining the compensation of executors
and administrators, upon all higher amounts collected.
This is one example of a regulation by which a just cor-
respondence between the duties and compensation of
county officers might be maintained without trenching
upon the apparent design of the last clause of section 5,
requiring provision to be made for the strict account-
ability of county and township officers for all fees by
them collected, and without the necessity of dividing the
counties into classes. No doubt other and perhaps bet-
ter examples might be suggested of regulation by other
means than the fixing of a definite sum to be paid to each
officer for discharging all the duties of his office, and re-
quiring him to provide all necessary deputies.

But the legislature has not seen fit to adopt a regula-
tion of the character suggested. On the contrary, by
the first County Government Act (Stats. 1883, p. 299),
the duties of all county and township officers were pre-
scribed by general provisions, and every county and
township officer, except supervisors and judicial officers,
was authorized to appoint as many deputies as might be
necessary for the prompt and faithful discharge of the
duties of his office. (Sec. 61, p. 316.) The act then

proceeded to classify the counties of the state by population, for the express purpose of regulating the compensation of the officers therein provided for. (Sec. 162, p. 332.) By the next section, section 163, the compensation of each officer in every class of counties except the first (the city and county of San Francisco alone constituted the first class and was left subject to the provisions of its old charter) was fixed at a certain sum of money (or sometimes certain fees), which, by a subsequent general provision (sec. 164, p. 361), was declared to be "in full compensation for all services of every kind and description rendered by the officers named in the act, their deputies and assistants." To leave no doubt of the meaning of this clause, the act proceeds: "And all deputies employed shall be paid by their principals out of the salaries hereinbefore provided." As an example of the provisions of section 163, we quote those relating to counties of the second class: —

" Sec. 164. In counties of the second class, the county officers shall receive as compensation for the services required of them by law, or by virtue of their office, the following salaries, to wit: —

"1. The county clerk, thirteen thousand dollars per annum.

"2. The sheriff, fifteen thousand dollars per annum.

"3. The recorder, fifteen thousand dollars per annum.

"4. The auditor, two thousand dollars per annum.

"5. The treasurer, four thousand five hundred dollars per annum.

"6. The tax collector, eight thousand dollars per annum.

"7. The assessor, fourteen thousand dollars per annum.

"8. The district attorney, six thousand five hundred dollars per annum.

"9. The coroner, such fees as are now or hereafter may be allowed by law.

"10. The public administrator, such fees as are now or hereafter may be allowed by law.

"11. The superintendent of schools, two thousand four hundred dollars per annum.

"12. The surveyor, such fees as are now or hereafter may be allowed by law.

"13. Justices of the peace, such fees as are now or hereafter may be allowed by law.

"14. Constables, such fees as are now or hereafter may be allowed by law.

"15. Supervisors, one thousand dollars each per annum."

Now, conceding again that to regulate the compensation of officers does not necessarily mean to fix the exact amounts to be paid them for discharging all the duties of their offices, including the services of deputies, it cannot be denied that this is one method of regulation by which the requirement of the constitution is satisfied, without affirming that the County Government Act of 1883, and all subsequent acts on the same subject, were and are in this respect unconstitutional and void.

But the contrary has been decided in *Langan* v. *Solano County*, 65 Cal. 122, and no one here — least of all the respondent — is disputing the correctness of that decision. Assuming, then, what is conceded on all sides, that the act of 1883 did regulate the compensation of county officers according to duties, let us consider for a moment the nature of that regulation, and its effect in limiting the compensation proper of the officers themselves.

The sum allowed to any given officer being a lump sum out of which he must pay for the services of all deputies and assistants necessary for the prompt and faithful discharge of all the duties of the office, it is evident that his own compensation consists of the residue remaining after payment of such deputies and assistants; and it is equally evident that just so far as the county assumes the payment of such deputies and assistants, such residue is enlarged and the compensation increased.

The cases reviewed by the supreme court of Illinois in deciding *Daggett* v. *Ford County*, 99 Ill. 334, cover this

point very completely. By the constitution of Illinois, the duty of " fixing the compensation of all county offi-cers, with the amount of their necessary clerk hire, sta-tionery, fuel, and other expenses," is imposed upon the respective county boards, with the proviso that the com-pensation of no officer shall be increased or diminished during his term of office. It was shown in the opinion delivered in the case cited, that this clause of the Illinois constitution had been construed in a series of decisions, by which it had been held, among other things, that the county boards might either allow a lump sum to cover the compensation of the officer and his expenses for clerk hire, etc., or that they could allow a certain amount for his proper compensation, and a separate amount for his expenses; that if the latter method was pursued, he could retain out of the fees collected by him the amount of his fixed compensation, and also the actual amount of his expenses, and no more, provided they did not ex-ceed the amount allowed; that if the board, after allow-ing a separate amount for expenses, found that it was insufficient, they could, from time to time during the term, increase such allowance, though they could not in-crease or diminish the certain sum fixed as the compen-sation of the officer. In other words, the supreme court recognized this distinction between the allowance for compensation and for clerk hire, etc., when separately fixed: that the latter could, but the former could not, be increased or diminished during the officer's term. But when the board allowed a lump sum to cover compensa-tion and expenses, so that the compensation proper con-sisted of the residue remaining over after payment of expenses, it was held that they could not, during the term of the officer, make any increased allowance, though convinced that their original estimate of expenses had been too low, nor could they require the officer to refund any part of the gross amount allowed, upon the ground that his actual expenses had fallen below the estimate upon which the gross allowance was based; and this for the reason that any increase or decrease of the gross

allowance necessarily increased or diminished the compensation of the officer.

Here, then, is most respectable authority, if authority were needed, for the proposition that our legislature could not, either by direct enactment or by authorizing the boards of supervisors to so order, impose upon a county treasury the payment of the salary of any deputy of a county officer elected while the act of 1883 remained in force and unamended as to the provisions under discussion.

This being so, it remains to consider what changes have been made by amendments or additions to the original act. By the amendments of 1885, the sections of the act were renumbered, and salaries in some counties reduced, but no change was made that need be considered here. In 1887, however, the act was revised and re-enacted. In the revision, section 164 of the original act became section 211, and among other changes therein were the following: Instead of the words above quoted from section 164, section 211 was made to read as follows:—

" Sec. 211. The salaries and fees provided in this act shall be in full compensation for all services of every kind and description rendered by the officers therein named, either as officers or *ex officio* officers, their deputies and assistants, *unless in this act otherwise provided,* and all deputies employed shall be paid by their principals out of the salaries hereinbefore provided, *unless in this act otherwise provided; . . . . and provided further, that whenever, in the opinion of the board of supervisors, the salary of any county officer* in the third, fourth, fifth, *twelfth, thirteenth, fifteenth, twentieth, twenty-second, twenty-third, twenty-fourth, twenty-sixth, twenty-ninth, thirty-second, thirty-third, thirty-fourth, thirty-sixth, thirty-seventh, thirty-eighth, thirty-ninth, and forty-first classes,* as fixed and provided in this act, is insufficient to pay a reasonable compensation for the services required to be performed, the said board shall allow such officer a deputy, or such number of deputies as in their judgment may be required to do the busi-

*ness of such office, in connection with the principal, at a salary
not to exceed one hundred dollars per month, to be paid at the
times and in the manner that said principal is paid; pro-
vided, that an affidavit shall be filed by such officer with the
said board, showing that such deputy,or deputies are required
by him in the proper discharge of his duties as such officer.*"

By their terms, these amendments (which I have put
in Italics) were applicable to the county officers then in
office, and who had been elected while the system of
compensation established by the act of 1883 was in force,
and (if so construed) were, for the reasons above given,
clearly unconstitutional.

But the respondent's case does not require such a con-
struction, and he does not contend that said amend-
ments went into operation until after the expiration of
the term of the county officers in office at the date of
their enactment.

His principal, Bonneau, was clerk of Marin County —
a county of the twentieth class — when the act of 1887
was passed, and respondent was his deputy. But Bon-
neau was re-elected for a new term in November, 1888,
and entered thereon January 7, 1889. On January 10th,
he filed the affidavit prescribed by the statute, showing
that he required a deputy in his office, and on the same
day the board of supervisors made an order allowing
him such deputy at a salary of fifty dollars per month,
to take effect from January 7th. In pursuance of this
order, respondent was appointed, and having obtained a
warrant for the amount of his salary for the month of
January, presented it to the appellant, the county treas-
urer, who refused to pay it, on the ground that the
proviso above quoted from the act of 1887 was uncon-
stitutional, and the order of the board of supervisors
therefore void. Thereupon this proceeding by *man-
damus* was commenced for the purpose of enforcing
payment. The learned judge of the superior court, in
awarding a peremptory writ of *mandamus*, held, if he is
correctly quoted in the respondent's brief, that Bonneau,
having been elected subsequent to the passage of the act

of 1887, went into office with "a right to the amount of salary named in the statute, and a contingent right, dependent on the facts, to have additional clerical assistance."

This being a fair statement of the proposition for which the respondent contends, it becomes necessary to consider whether it will bear the test of a critical examination.

It is to be observed, in the first place, that it assumes a construction of the proviso which is more restricted than its terms, and more restricted than its application in this case, viz., that it was intended to apply only when, from change of conditions, an officer might require *additional* clerical assistance, meaning, as I understand the expression, clerical assistance in addition to that which was required at the date of the passage of the act. If this is the construction placed upon the proviso by the superior court, it must be admitted that it is not very fully borne out by the terms of the statute. The act says nothing about change of conditions through increase of population, or from any other cause. No facts are enumerated upon which the action of the board is made to depend. The only condition is, that the officer shall file an affidavit showing that for the proper discharge of his duties he requires the assistance of a deputy or deputies, which, it is apparent, might be the case in a county in which the conditions were unchanged, or where the change of conditions had resulted in lightening the duties of the office. Nor does the statute require the board of supervisors to find that the duties of the office have become more onerous since the passage of the act. All they have to do is to reach the conclusion, in the exercise of their own discretion, that the salary as fixed and provided in the act is insufficient to pay a reasonable compensation for the services required to be performed, and if they are of that opinion, they shall allow such officer not "*additional clerical assistance,*" but "*a deputy, or such number of deputies as in their judgment may be required to do the business of such office, in*

*connection with the principal*," with salaries payable out of the county treasury.

Giving to this language its literal and obvious construction, the working of the law may be fairly illustrated by applying it to counties of the second class, which, by the amendments of 1889, were brought within its operation.

Referring to a clause of the statute above quoted, it will be seen that the compensation allowed to the different officers of this class of counties is fixed upon a scale which clearly indicates that it was intended to cover the salaries of a number of deputies in each of the principal offices. The clerk, for instance, has thirteen thousand dollars, the sheriff fifteen thousand dollars, and so on. Now let it be supposed that the legislature intended the clerk to have for his proper compensation the sum of three thousand dollars (which is equal to the *maximum* allowed by the constitution to the state treasurer, secretary of state, controller, and other state officers), and that the remaining ten thousand dollars was allowed for his necessary deputies, say six in number. This is the condition of things when the law is passed and when the clerk is elected. On assuming the office, he can truthfully swear, although the conditions are entirely unchanged, that he requires the assistance of six deputies for the proper discharge of the duties of his office, and he files an affidavit to that effect. Thereupon it becomes the duty of the board of supervisors to consider whether his salary, as fixed and provided in the act, is sufficient to pay a reasonable compensation for the services of the clerk and six deputies; and if they happen to be of the opinion that three thousand dollars is not a reasonable compensation for the clerk, or that ten thousand dollars is not sufficient for the compensation of the six deputies, they must make an order allowing the clerk to appoint, not additional deputies, but as many deputies as he requires in connection with himself to perform the duties of the office, and order their salaries paid out of the county treasury.

This result of a literal construction of the law is so flagrantly absurd, when applied to counties of the second class, that it must be rejected in favor of one more reasonable, though certainly less consonant with the terms of the statute. And it may be conceded that the most reasonable construction that can be given to this proviso is that indicated in the foregoing extract from the opinion of the judge of the superior court. It seems to me, however, that although the law may have been construed by him according to the actual intention of the legislature, it was applied in this case in its literal sense, for the respondent was Bonneau's sole deputy when the law was passed, and when he was last elected. It was not shown that an additional deputy was required, and in fact none was required. Respondent continued after the order of the board and his new appointment to be, as he had been before, the sole deputy in the office, and what was in fact done in Marin County by its clerk and supervisors was precisely what I have supposed done in attempting to illustrate the working of the law according to its express terms in a county of the second class. If, therefore, the order under which the respondent claims can be upheld, all the proceedings above supposed to have taken place in a county of the second class would be entirely legitimate and proper.

In making this statement, I have not overlooked the fact, which appears in the evidence, though not in the findings or decision of the court, that the business of the clerk of Marin County did increase after the passage of the act of 1887 so much that the respondent, who had before given but a part of his time to his duties as deputy clerk at a small salary, was subsequently compelled to devote his whole time to the duties of the office, and necessarily earned and received a larger salary. If this fact — testified to, but not found — is to be considered as bringing the respondent's case within his construction of the law, it will be necessary to bring the law so construed to the test of the constitution.

According to this construction, the legislature, after

dividing the counties of the state into forty-eight classes for the express purpose of regulating the compensation of the county officers, and having regulated such compensation by the system of allowing to each officer a certain fixed sum, or certain fees out of which he must pay the salaries of all necessary deputies and assistants, has proceeded to ingraft upon this system a proviso applicable to twenty classes, to the effect that the supervisors may, after the election of any officer, if they think the compensation allowed him by the act in force at the date of his election is insufficient, pay out of the county treasury the expense of employing any deputies he may require in addition to those required at the date of the passage of the act.

Assuming this to be the true meaning of the proviso, it either is or is not a mode of regulating the compensation of the officers of the selected classes of counties. If it is a mode of regulation, how does it regulate, and through whose agency? Clearly, it seems to me, through the agency and subject to the discretion of the board of supervisors. If, under the law in force at the date of his election, an officer is to receive for his proper compensation one sum (viz., what is left of his fixed salary after paying his necessary deputies), and under the order of the board, made after his election, a larger sum (viz., what is left of his fixed salary after paying, at most, only a part of his necessary deputies), it is the discretion of the board, and not that of the legislature, which fixes the amount, and such amount, instead of being fixed in advance of his election, can only be fixed after his election; for, by the terms of the proviso, the affidavit of the officer is a necessary preliminary to the order of the board. Passing over this last objection, which, in view of the evident purpose of sections 5 and 9 of article XI., is serious enough, let us consider only the first.

For myself, I am far from believing that the plan of regulating the salaries of local officers by local boards is a bad one. On the contrary, I think the best plan would

be to leave such matters to the control of those who are most directly interested, and most capable of deciding for the best. But it is very certain that the framers of our constitution distinctly intended to give this power to the legislature, to the exclusion of the boards of supervisors. This is not only evident from the language of section 5 of article XI., but is shown by the debates of the convention. When this article was reported to the convention, Mr. Webster, of Alameda, offered an amendment to section 5, providing, in effect, that the respective boards of supervisors should regulate the compensation of other county officers. After a short debate, in which the only argument against the amendment consisted of a statement of the supposed mischiefs involved in conferring such a power upon local boards, the amendment was voted down, and the section adopted substantially as reported. (Debates of Constitution, 1048, 1049.) The framers of the constitution having thus deliberately rejected the proposition to invest the board of supervisors with discretionary authority in this particular, and having committed the whole matter to the discretion of the legislature, under a mandatory injunction to exercise the power by regulating in advance the compensation of all officers according to their duties, it is clear that the legislature cannot delegate such power to the supervisors, to be exercised according to their discretion.

But counsel for respondent seek to avoid the force of this argument, by insisting that the proviso in question, according to their construction of it, does not in any way regulate or affect the compensation of the county officers. They make a distinction between the compensation of the officer and the expenses of his office, and contend that the County Government Act itself fixes the compensation of the officers beyond the power of the board of supervisors to change or alter it, and that the proviso merely gives the board power to allow and pay the expenses of the office occasioned by changed conditions and unforeseen contingencies. I understand this

to be the position to which the respondent commits himself, and upon which he feels most confident of sustaining the judgment in his favor.

In view of the foregoing discussion, it would seem rather difficult to maintain that the proviso in question does not affect and was not intended to regulate the compensation of county officers; but conceding for the moment that the respondent is right in his construction of it, what is the result? The result is, that we have an act in direct conflict with various provisions of the constitution prohibitory of local and special legislation.

If there is any one feature of the constitution more marked, any characteristic more pervasive than all others, it is this oft-reiterated, this general and specific inhibition of local and special laws. I cite the following clauses as bearing more directly upon the matter under discussion:—

Art. I., sec. 11: "All laws of a general nature shall have a uniform operation."

Art. IV., sec. 25: "The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . . 9. Regulating county and township business, or the election of county and township officers; . . . . 33. In all other cases where a general law can be made applicable."

Now, this law, which for the present we assume has nothing to do with the compensation of county officers, but merely empowers the boards of supervisors to allow and pay the expenses caused by changed conditions and unforeseen contingencies, is certainly a law of a general nature, relating as it does to a matter of equal interest to every part of the state. It ought, therefore, to have a uniform operation throughout the state, instead of being confined to less than half of the counties. But passing over this objection to the law, as one founded upon a disputed, and perhaps doubtful, construction of section 11, article I., it seems clear that this proviso is in direct conflict with the ninth and thirty-third subdivisions of section 25 of article IV., for certainly it is a regula-

tion of county business, and the case not only admits, it demands, the application of a general law.

But this law is local and special. It selects certain classes of counties, apparently at random, some large, some small, some of intermediate size, omitting others of every grade of population, above, below, and intermediate, and confers upon the classes so arbitrarily selected a power and a privilege in the transaction of the county business which is denied to others standing in precisely the same relation to the subject of the enactment. The fact that it is made applicable to classes of counties created in pursuance of authority expressly conferred by the constitution itself, viz., the authority to classify counties by population for the purpose of regulating the compensation of county officers, does not make it a general law; for on the construction which is here assumed, it is not a regulation of the compensation of officers, but a provision for contingent expenses; and a classification permitted for one kind of legislation cannot be made the basis of a different kind of legislation to which it is manifestly inappropriate. It is this consideration which distinguishes this case from *Cody* v. *Murphey,* 89 Cal. 522, and *People* v. *Henshaw,* 76 Cal. 444. In the first-mentioned case, an act was upheld, although it applied to but one class of counties, but it was an act to regulate the compensation of the county officers. In the Henshaw case, the act upheld affected only one class of cities, but it was an act relating to municipal organization, for which purpose the constitution expressly authorizes the classification of cities and towns in proportion to population. (Art. XI., sec. 6.)

The case of *Miller* v. *Kister,* 68 Cal. 142, on the other hand, holds that the classification of counties established by the act of 1883, for a legitimate purpose, cannot be made the basis of discriminating legislation, even when it relates to the compensation of county officers.

The case of *Ex parte Westerfield,* 55 Cal. 550, 36 Am. Rep. 47, is also directly in point on the proposition that a law is not general merely because it applies equally

to all of a class arbitrarily defined. As Mr. Justice Mc-
Kinstry says in that case: "A general law must be as
broad as its object." Therefore a law the object of
which is to provide for the payment of county expenses
arising from unforeseen contingencies must be as broad
as the state, for it is absurd to say that unforeseen con-
tingencies will happen in some counties but not in
others.

In the case of *Pasadena* v. *Stimson*, 91 Cal. 238, a law
applying to two classes of municipal corporations was
held unconstitutional, because it related to a subject for-
eign to the purpose for which the classification of such
corporations is authorized, and the discussion on this
point was summed up in the following words: "The con-
clusion is, that although a law is general and constitu-
tional when it applies equally to all persons embraced
in a class founded upon some natural or intrinsic or
constitutional distinction, it is not general or constitu-
tional if it confers particular privileges or imposes pe-
culiar disabilities or burdensome conditions upon a class
of persons arbitrarily selected from the general body of
those who stand in precisely the same relation to the
subject of the law." (Pages 251, 252.)

In view of these decisions, the conclusion cannot be
avoided that the proviso, construed as something dis-
tinct from a regulation of the compensation of county
officers, is local and special legislation, and therefore
void. And this vice of the statute in question distin-
guishes it broadly from the law which was sustained in
*Kirkwood* v. *Soto*, 87 Cal. 394, upon which the respond-
ent so confidently relies. That was a general law allow-
ing superintendents of schools in every county in the
state certain necessary official expenses, and was in this
respect similar to many general provisions of the codes
allowing for extraordinary expenses of county offices,
such, for instance, as the preparation of a new great
register (Pol. Code, sec. 1113), to which I see no consti-
tutional objection.

If I am correct in the views above expressed, the pro-

viso in question is void as special legislation, even if construed according to respondent's contention, that it does not affect the compensation of county officers. But although I have for the moment conceded the correctness of his position as to this point, I do not think it can be maintained. The proviso, in my opinion, is an attempt to regulate such compensation by committing to the discretion of the supervisors a duty which the constitution had confided to the legislature exclusively, — a duty which, under the terms of the act, the supervisors cannot perform until after the election of the officers to be affected, whereas the constitution requires it to be performed by the legislature in advance of their election.

For these reasons, I concur in the judgment of reversal.

McFARLAND, J., dissenting. — I dissent. I have not the time, and there is no necessity, to state my views at large on the questions here involved. I will state some of them, however, briefly.

1. The undisputed general rule is, that all presumptions are in favor of the constitutionality of statutes; that before an act of a co-ordinate branch of the government can be declared invalid by the judiciary for the reason that it is in conflict with the constitution, such conflict must be clear, positive, abrupt, and unquestionable; and that in case of fair, reasonable doubt of its constitutionality, the statute should be upheld. I state this old rule here because I think it particularly applicable to the case at bar; for at best, the unconstitutionality of the statute here in question is certainly not so clear as to be seen without a good deal of microscopic aid.

2. The amendment of 1887 was not, in my opinion, in violation of section 9 of article XI. of the constitution, which provides against increase of compensation "after election." Bonneau, the county clerk, whose deputy Dougherty, the plaintiff, is, was elected *after* the

passage of said amendment; and he did not "contract," as contended by appellant, that he would do all the work of his office, or pay a deputy if necessary to employ one. The law which gave the contingent right to have a deputy paid by the county was in force at the time of his election. Moreover, the employment of a deputy paid by the county did not "increase the compensation" of the county clerk. *His* compensation was the same after the employment of the deputy as before. It is contended that his compensation was increased because his work was lessened. Now, in the first place, there is no such presumption; the presumption is, that the board allowed the deputy because there was additional work for him to do. But in the second place, suppose his work was lessened, shall a solemn act of the legislature be declared void by the circuitous reasoning which brings us to the conclusion that a decrease of duties is an "actual increase of compensation" within the meaning of the constitution? Suppose that the legislature had created a new county office, and transferred to the incumbent of such new office a part of the business formerly required to be done by the county clerk, would that have been an "increase of compensation" of the county clerk?

3. Neither do I think that the amendment is "special legislation" inhibited by section 25 of article IV., or that it has not a "uniform operation" within the meaning of section 2 of article I. The legislature has the power to "establish a system of county governments" (art. XI., sec. 4), and to "regulate" the compensation of county officers, "and for this purpose may classify the counties by population." (Art. XI., sec. 5.) Under these provisions, the legislature may create as many classess as its judgment dictates; and such classification is not special legislation (*Longan* v. *Solano County,* 65 Cal. 122); and of course, if such legislation is not "special," it has a "uniform operation," because it operates alike on each of the classes upon which it operates at all.

4. And I see nothing in the point that the board of

supervisors could not be given the power to allow the deputy and provide for his salary. The constitution merely declares that the legislature shall, by general laws, *provide* for the election " or appointment" of certain named county officers, and *regulate* their compensation. (Art. IX., sec. 5.)   The deputy involved in the case at bar can hardly be considered as one of the county officers mentioned in the section just referred to; but if he were, it is difficult to see why the legislature could not "provide" for his appointment in the way mentioned in the statute under consideration. And the legislature is only to *regulate* the compensation.   I confess that I can find no authority in either common or law literature for giving to the word " regulate " the meaning of " fix," — that is, to name, definitely, exactly, and mathematically, the very sum in dollars and cents of the compensation.   I find no general or law dictionary which uses the word "fix" at all in defining the word " regulate," or gives one as the synonym of the other. Indeed, the words seem to have quite different significations.   Some of the definitions of " fix " are, to make " firm, staple, or fast "; " to set or place permanently "; " to *fasten* immovably." (Webster.)   The common definitions of "regulate " are " to adjust by rule, method, or established mode "; " to direct by rule or *restriction* "; " to subject to governing principles of law."   (Webster.) These same definitions of " regulate " are to be found in law dictionaries.   The latter word, therefore, has much greater latitude of meaning than " fix," which includes the notion of inflexibility and rigidity.   To fix is to fasten a thing immovably, — as with nail and hammer; while to regulate includes the idea of marking the boundaries and prescribing the methods within and by which the thing may be done by others.   I know that words are uncertain things, and must be construed with reference to the context and relations in which they are found; but certainly a word should not be strained from its usual to a restricted sense when the result of such construction is to upset a statute.   Therefore, giving to

" regulate " what, it seems to me, is clearly its usual meaning, I see no question in the case about unwarranted " delegation of authority " by the legislature. The constitution expressly provided that " the legislature shall provide a system of county *governments*," which shall have, to a large extent, legislative powers; and I cannot see how the power to employ and pay deputies in county offices, within restricted limits, is different from the numerous other powers which boards of supervisors are exercising every day without question. The code formerly provided that the board of supervisors shall have the power " to fix the compensation of all county officers not otherwise in this code or by general or special law fixed, and provide for the payment of the same " (Pol. Code, sec. 4046); and this court held, in *Kinsey* v. *Kellogg*, 65 Cal. 115, that such power was properly granted. This was practically holding that the county governments might be given the power to fix the salaries of all county officers.

I do not think that the position of appellant is made any stronger by putting it in the form of the proposition that the amendment of 1887 undertook to give the board of supervisors the power " to change or suspend the law." The amendment is in the very section 211 which contains all the law on the subject; and the change was made by the legislature itself.

In my opinion, the judgment should be affirmed.

PATERSON, J., concurred in the views expressed by Mr. Justice McFarland.

The following is the opinion above referred to, rendered in Bank on the 20th of January, 1892: —

GAROUTTE, J. — This was an application for a writ of mandate to compel the defendant to pay a warrant for services rendered by plaintiff as deputy county clerk of Marin County. The trial court ordered the writ to issue, and this is an appeal from the judgment and order denying a new trial.

The facts of the case are: One Bonneau was, at the commencement of this proceeding, and had been for more than four years next preceding thereto, the county clerk of Marin County. Said Bonneau was last elected in 1888, his term of office beginning January 7, 1889. Upon January 10, 1889, he filed an affidavit with the supervisors of said county, by which he showed that a deputy was required by him in the proper discharge of his duties as such county clerk, and said board at that time made an order allowing him a deputy at a salary of fifty dollars per month, to take effect from January 7, 1889. The order of the board of supervisors was made by authority of a provision of section 211 of the County Government Act as amended, found at page 207 of the Statutes of 1887, which reads: " Provided further, that whenever, in the opinion of the board of supervisors, the salary of .any county officer in the third, fourth, fifth, twelfth, twentieth [and several others] classes, as fixed and provided in this act, is insufficient to pay a reasonable compensation for the services required to be performed, the said board shall allow such officer a deputy, or such number of deputies as in their judgment may be required to do the business of such office, in connection with the principal, at a salary not to exceed one hundred dollars per month, to be paid at the times and in the manner that said principal is paid; provided, that an affidavit shall be filed by such officer with the said board, showing that such deputy or deputies are required by him in the proper discharge of his duties as such officer."

It is insisted by appellant that the order of the board of supervisors, made January 10, 1889, allowing the county clerk a deputy at a salary of fifty dollars per month, to be paid by the county, was an increase of the compensation of such county clerk after his election and during his term of office, and that such order, for these reasons, was void and of no effect, being in violation of the provisions of section 9, article XI., of the constitution of this state, wherein it is provided that " the com-

pensation of any county, city, town, or municipal officer shall not be increased after his election or during his term of office." The order of the board under consideration was made after the election and during the term of office of said Bonneau, and the question presented is, Did the order allowing the clerk a deputy, and ordering that his salary be paid from the county treasury, increase the compensation of the county clerk? If it did increase his compensation, it is violative of the provision of the constitution just quoted, and must give way for that reason.

That part of the order wherein it is recited that "the clerk is allowed a deputy" of itself is practically of no effect and force, because the clerk, by virtue of his office, has the power to appoint one or more deputies to perform, or assist him in the performance of, the duties of such office, entirely regardless of the wishes or demands of the board of supervisors; and this order of the board, construed in connection with the statute, is substantially as follows: "In the opinion of the board of supervisors of Marin County, the salary of the county clerk of said county, as now provided by law, is insufficient to pay a reasonable compensation for the services required to be performed by him, and it further appearing by the affidavit of the said clerk that a deputy is necessary to a proper performance of the duties of his office, it is ordered that such deputy be paid fifty dollars per month from the county treasury." The duties resting upon Bonneau when he qualified as county clerk and entered upon his office were plain and unmistakable; for they are enumerated in detail by the statute, and upon every principle he was bound to discharge those duties. The law would not even allow him to take a single step in the performance of them until he agreed, under the solemnity of his oath, that he would "perform all the duties of his office to the best of his ability." If his duties as county clerk during the life of his term of office become so burdensome and assume such proportions that he has not the ability, either mental or physical, to

perform them, he is not thereby released from the obligations he assumed at the inception of his term of office. His services are purely ministerial, and if, through simple desire or actual necessity, assistance is wanted, the law allows him to call to his aid as many deputies as he may see fit to appoint. If unwilling to adopt this course, and unable to perform the duties of the office personally, he can resign; but as long as he remains in office he is bound to perform the duties of the office under his official oath, or remain and render himself amenable to charges and removal for neglect of official duty. In *Evans* v. *City of Trenton,* 24 N. J. L. 766, it is said: "It is a well-settled rule that a person accepting a public office with a fixed salary is bound to perform the duties of the office for the salary. He cannot legally claim additional compensation for the discharge of these duties, even though the salary may be a very inadequate remuneration for the services, nor does it alter the case that by subsequent statutes or ordinances his duties are increased, and not his salary. His undertaking is to perform the duties of his office, whatever they may be, from time to time during his continuance in office for the compensation stipulated, whether these duties are diminished or increased; and whenever he considers the compensation inadequate he is at liberty to resign." The constitution provides that the legislature shall, by general and uniform laws, provide for the election or appointment of county officers, and that it shall regulate the compensation of all such officers in proportion to duties. (Art. XI., sec. 5.) In pursuance of this provision, the legislature, by an act entitled "An act to establish a uniform system of county and township governments," found at page 299, Statutes of California, 1883, proceeded to carry into effect this provision of the constitution, and as amended by Statutes of 1885 (p. 178), fixed the salary of county clerks of counties of the twentieth class (of which Marin County was one) at two thousand five hundred dollars per annum, which was to be for the "services required of them by law or by vir-

tue of their office"; and section 211 of the same act (Stats. 1887, p. 207) further provided: "The salaries and fees provided in this act shall be in full compensation for all services of every kind and description rendered by the officers therein named, either as officers or *ex officio* officers, their deputies or assistants, unless in this act otherwise provided, and all deputies employed shall be paid by their principals out of the salaries hereinbefore provided, unless in this act otherwise provided." It will thus be seen from the foregoing principles and provisions of the statute and constitution, that a public officer accepts an office upon the condition that he will perform all the duties of the office, and while he remains in such office the public has the right to demand that he perform such duties.

In accordance with the mandate of the constitution, the legislature fixed the salary of the county clerk of Marin County in proportion to the duties of the office; not in proportion to the duties of the office the county clerk could personally perform; for the statute itself expressly provided that it should be in full compensation for the performance of all the duties of the office; although such would be the necessary construction of the provision of the constitution, regardless of the statute.

The fact that the law under which the board of supervisors acted in making the order was in force prior to the election of the county clerk is immaterial to the question involved, for it is not the act of the legislature that increases the compensation, but the order of the board of supervisors, passed long after the act took effect, long after the election of the county clerk and during his term of office. The provision of the statute is entirely ineffectual, save simply as a delegation of power to the board of supervisors to order these things to be done. The legislature had no power upon the tenth day of January, 1889, to increase the compensation of the county clerk of Marin County, and not having the power itself so to do, much less could it authorize such board to do so. This provision of section 211 of the County Gov-

ernment Act applies to twenty classes of counties, and the county clerks in some of those classes of counties have salaries ranging from ten to thirteen thousand dollars per annum. Every reason that can be urged, and every principle of law that can be invoked, to sustain the validity of this order can be urged and invoked with the same force to sustain an order made by the various boards of supervisors of these counties allowing their county clerks all the deputies necessary for the proper administration of their offices, the counties paying therefor, and thus leaving their entire salaries remaining as compensation for their personal services. If such is the law, all the deputies of all the county officers of twenty classes of counties, under the general election of 1888, by order of the various boards of supervisors, could have been paid out of the county treasury of the respective counties. This doctrine can only be sustained upon the theory that the word "compensation," as used in the constitution, refers simply to the personal services of the public officer, and not as compensation for the performance of all the duties of the office. The fact is directly to the contrary, and is so recognized by the legislature throughout these various provisions of the County Government Act. The board can only allow such deputy upon the request of the principal, and only when the principal insists that his services are necessary in the performance of the duties of the office. If not paid by order of the board from the county treasury, the principal, being bound to perform all the duties of his office, and a deputy being necessary, would be bound to employ the deputy and pay him from his own salary. The county, by order of the board, pays six hundred dollars per annum as part compensation for the performance of the duties of the clerk's office. From a pecuniary standpoint, such course is a very substantial benefit to the county clerk. The deputy is under his control, is empowered by law to act in the place and stead of his principal in all matters; the principal is liable for his salary, and a payment by the county of such deputy's

salary is, for all practical purposes, a payment to the principal, and in this case necessarily results in an increase of the principal's compensation to the extent of six hundred dollars per annum. It is perfectly immaterial to the clerk whether his salary is increased to three thousand one hundred dollars per annum, and from that sum he pays his deputy six hundred dollars per annum, or that it remains at two thousand five hundred dollars and the county pays the deputy the six hundred dollars. The clerk reaps the full benefit of the six hundred dollars in both cases. To be sure, this reasoning concedes that the clerk must have the deputy, but such must be the fact, for the clerk is bound to perform all the duties of his office, and a deputy is a necessity to the performance of those duties, for, by his affidavit, he himself has so declared.

To construe this provision of the constitution so that a county clerk's salary could not be increased during his term of office, but that an act of the legislature would be valid which provided that all of his deputies, men whom he was bound to employ and bound to pay in the absence of such an act, should be paid by the county, independent of and in addition to the clerk's salary, would be to allow that to be done indirectly which could not be done directly, and would be establishing a medium for the practice of the very abuses which the constitutional provision was inserted to destroy. The provision of the statute appears to be a crude and ill-conceived effort to evade a very plain and very wholesome provision of the constitution of the state.

Let us take a broader view of this provision of the County Government Act which authorizes the boards of supervisors of twenty classes of counties to pay the salaries of the deputies of all the county officers of the counties of those classes, under certain conditions and contingencies, and estimate its true worth by another test. Article I., section 11, of the constitution, requires that "all laws of a general nature shall have a uniform operation." The County Government Act is essentially

a law of a "general nature"; it must be so, to have any validity whatever; and with the provision under discussion before our eyes, can it be said the County Government Act has a uniform operation?    In *Ex parte Smith and Keating*, 38 Cal. 702, Justice Sanderson said, referring to the meaning of the constitution in the use of the words "uniform operation": "Its meaning, as has been repeatedly declared by the highest judicial tribunal in the state, is, not that general laws must act alike upon all subjects of legislation, or upon all citizens and persons, but that they shall operate uniformly, or in the same manner, upon all persons who stand in the same category, — that is to say, upon all persons who stand in the same relation to the law in respect to the privileges and immunities conferred by it or the acts which it prohibits."

We must view this question in the light of the fact that the County Government Act was intended to establish a uniform system of county governments, and that the classification of counties, and regulation of the compensation of county officers in proportion to duties, were important elements in the formation of that act, and were material portions to which the principle of uniformity was to be applied.    When amended in 1887, by the provision delegating these powers to the boards of supervisors in twenty classes of counties, that provision simply became a part of the whole, a strand of the rope which formed the County Government Act; that provision certainly gained no additional strength or weight simply by being a more recent creation of the legislature than the act of which it became a part, and its validity must be weighed and tested as if it were a provision placed in the act of 1883.    Now, does it disturb the uniformity of the operation of that act?    We find the act first classified the counties of the state according to population, for the sole and express purpose of regulating the compensation of county officers according to their duties.    It then regulated the compensation of county officers according to their duties, but it did

not stop there; it provided further, that in twenty classes
of counties, naming them, the supervisors of those coun-
ties might relieve the county officers of some of their
official burdens, by ordering that their deputies be paid
from the county treasury.   By this provision the legis-
lature destroyed the uniformity of the operation of the
act.    In twenty-eight classes of counties the compensa-
tion of county officers is fixed at an amount certain and
definite,—an amount that cannot be changed save by
an act of the legislature; but in the remaining twenty
classes of counties the compensation for the perform-
ance of the duties by the various officers may fluctuate
every month in the year at the mere whim of the boards
of supervisors.    The County Government Act, upon the
same matters and under the same state of circumstances,
should operate equally upon all classes of counties; but
the legislature has said that in twenty classes of coun-
ties only, whenever the salary of county officers is
insufficient to pay a reasonable compensation for the
services required to be performed, the board of supervi-
sors may allow them deputies at the county's expense.
Now, if the salaries should prove insufficient to pay a
reasonable compensation to the county officers for the
duties to be performed in the remaining twenty-eight
classes of counties of the state, why should they not
be allowed the same relief ?    In twenty-eight classes of
counties the legislature fixed the salaries of county offi-
cers at a definite sum, in proportion to the duties of the
office; in twenty classes of counties the minimum sum
only is fixed, and the boards of supervisors have the
power to fix the compensation for the performance of
the duties of the various officers at any sum which the
board may think is a proper proportion as compared
with the duties of the office.    This is an unjust discrim-
ination against twenty-eight classes of counties; and the
provision, not acting alike upon all classes of counties,
necessarily destroys the uniformity of the operation of
the act.

    Respondent's counsel insist that an amendment to the

act of 1883, relating to the compensation of county officers of one class of counties, is a law of a general nature in itself, and that consequently this provision of section 211, applying to twenty classes of counties, is no less a general law; and purporting to deal with twenty counties only, and having a uniform operation as to those classes, the provision complies with the test in both respects, and is therefore within the constitution. This contention is true to a limited extent, and was so held by this court in *Cody* v. *Murphey*, 89 Cal. 522, wherein it was decided that legislation pertaining to the compensation of officers of one class of counties was a law of a general nature, and in that case uniform in its operation, it being directly in line with all other provisions of the County Government Act pertaining to the same subject-matter. But there is a broad distinction between that provision of the act and the one under consideration in this case. If the legislature, as has been attempted here, can delegate the power to the supervisors to regulate the salaries of county officers of twenty classes of counties, it could provide a separate and distinct means for the regulation of the salaries of the county officers of each separate and distinct class of counties, and thus the uniformity of the operation of the County Government Act, upon the question of the regulation of salaries of county officers, would consist solely in the fact that the operation of the act was uniformly different in each class of counties.

It would seem that the case of *Miller* v. *Kister*, 68 Cal. 142, is conclusive against respondent upon this question. In that case the section under consideration was section 4 of the act of 1885, amending the County Government Act as to salaries (Stats. 1885, p. 195), which section provided that in three classes of counties the salaries fixed in said amendment (all reductions, which were within the power of the legislature to make) should take effect on the first day of the following month, while the amendment provided that in all other classes the salaries should not take effect during the terms of the then officers.

Held, — 1. That the same was special legislation; and 2. That the operation of the law is exceptional and eccentric, and causative of discrimination between the officers upon whom it is to operate. " *The few are excluded from the privileges given to the many.*" And the section was held to be void. We think this provision destroys the uniformity of the operation of the County Government Act in respect to the matters upon which it attempts to speak, and is a violation of a plain requirement of the constitution, which should be scrupulously guarded and upheld.