[Crim. No. 1558. In Bank.—January 3, 1910.]

## Ex Parte L. W. KING on Habeas Corpus.

Aᴄᴛ Pʀᴏʜɪʙɪᴛɪɴɢ Sᴀʟᴇ ᴏꜰ Lɪǫᴜᴏʀ ɴᴇᴀʀ Cᴀᴍᴘ ᴏꜰ Mᴇɴ Eᴍᴘʟᴏʏᴇᴅ ᴏɴ Pᴜʙʟɪᴄ Wᴏʀᴋ—Cᴏɴsᴛɪᴛᴜᴛɪᴏɴᴀʟ Lᴀᴡ.—The act of March 25, 1909 (Stats. 1909, p. 722), entitled "An act to prohibit the sale of intoxicating liquors within a certain distance of any camp or assembly of men, numbering twenty-five or more, engaged upon the construction, repair or operation of any public work, improvement or utility," is constitutional.

Iᴅ.—Uɴɪꜰᴏʀᴍ Oᴘᴇʀᴀᴛɪᴏɴ ᴏꜰ Gᴇɴᴇʀᴀʟ Lᴀᴡ.—The proviso in section 1 of the act, excepting from its operation sales of liquor made at licensed saloons established at least six months prior to the establishment of such camp or assembly of men, or sales made at any winery, licensed brewery, or distillery where the liquor is manufactured, does not violate section 11 of article I of the state constitution, requiring all laws of a general nature to have a uniform operation.

Iᴅ.—Uɴɪꜰᴏʀᴍ Oᴘᴇʀᴀᴛɪᴏɴ ᴏꜰ Lᴀᴡ ᴏɴ Dɪꜰꜰᴇʀᴇɴᴛ Cʟᴀssᴇs.—A law is general and constitutional when it applies equally to all persons embraced in a class founded upon some natural or intrinsic or constitutional distinction; and if it operates uniformly upon all the members of such class it necessarily has the "uniform operation" required by section 11 of article I of the constitution.

Iᴅ.—Pᴏᴡᴇʀ ᴏꜰ Lᴇɢɪsʟᴀᴛᴜʀᴇ ᴛᴏ Cʟᴀssɪꜰʏ.—The question whether the individuals affected by a law do constitute such a class is primarily

CLVII Cal.—11

one for the legislature, and when such a legislative classification is attacked in the courts every presumption is in favor of the validity of its act.

ID.—PRESUMPTION IN FAVOR OF CLASSIFICATION—REASONS ACTUATING LEGISLATURE.—Where, upon the facts legitimately before a court,. it is reasonable to assume that there were reasons, good and sufficient in themselves, actuating the legislature in creating the class, though such reasons may not clearly appear from a mere reading of the law, such assumption will be made, and the legislation upheld; and to warrant a court in adjudging an act void for want of uniformity of operation, it must clearly appear that there was no reason sufficient to warrant the legislature in finding a difference and making the discrimination.

ID.—ITINERANT AND PERMANENT SALOONS—CLASSIFICATION AND DISCRIMINATION BETWEEN.—The design of the act was to protect the work therein described and the men engaged therein from the "itinerant. saloon," established temporarily in a certain place solely because of the proximity of such a camp or assembly. The difference between the method of conducting the business of such a saloon, and. the method of conducting the business of a saloon permanently established, warranted the legislature in placing them in different. classes and discriminating between them.

ID.—CRITERION FOR DETERMINING PERMANENCY OF SALOON.—The requirement of the act, that a liquor saloon or store shall have been established at least six months "prior to the establishment of such camp or assembly of men," in order to be considered a permanently established place, is not unreasonable, and is a proper exercise of its police power.

ID.—REASONABLENESS OF PROHIBITED LIMIT FOR SALOON.—The question whether the distance prescribed by the act,—four miles,—within which an "itinerant saloon" was prohibited was a reasonable one,. was for the determination of the legislature, and there is nothing. to indicate that it is unreasonable.

APPLICATION for a Writ of Habeas Corpus directed to, J. W. Kelly, Sheriff of Kern County.

The facts are stated in the opinion of the court.

Hammack & Hammack, and D. M. Hammack, for Petitioner.

J. W. P. Laird, District Attorney of Kern County, Leslie R. Hewitt, City Attorney of Los Angeles, W. W. Dodge, Assistant City Attorney, and W. B. Mathews, for Respondent. Sheriff.

Warren Olney, Jr., Max Thelen, and Fred E. Borton, *Amici Curiæ*.

ANGELLOTTI, J.—The petitioner seeks his discharge from the custody of the sheriff of Kern County on the sole ground that the act of the legislature of the state under which he is held is unconstitutional and void.

The act in question is one entitled "An act to prohibit the sale of intoxicating liquors within a certain distance of any camp or assembly of men, numbering twenty-five or more, engaged upon the construction, repair or operation of any public work, improvement or utility," approved March 25, 1909 (Stats. 1909, p. 722).

By section 1 of this act it is made unlawful "for any person to sell, keep for sale, or give away, any spirituous, vinous, malt or mixed intoxicating liquors at any place situated more than one mile outside the limits of an incorporated city or town, and within four miles of any camp or assembly of men, numbering twenty-five or more, engaged upon, or in connection with, the construction, repair or operation of any public or *quasi* public work, improvement or utility; provided, however, that nothing in this section contained shall be deemed to apply to the sale, keeping for sale, or disposal of any such liquor at a licensed saloon or liquor store which shall have been established, or at a licensed saloon or liquor store which shall be maintained, at the time this act takes effect, upon the same premises where a licensed saloon or liquor store shall have been established, at least six months prior to the establishment of such camp or assembly of men, or to the sale, keeping for sale, or disposal of any such liquors at any winery, licensed brewery or distillery, where the same is manufactured." Section 2 makes a violation of the act a misdemeanor punishable by fine or imprisonment or both fine and imprisonment.

The claim of the petitioner is that the effect of the proviso excepting certain sales from the operation of the act is to render the act violative of section 11 of article I of our constitution, which provides: "All laws of a general nature shall have a uniform operation." It is urged that, in view of this proviso, this law limiting the business of the sale of intoxicating liquor denies to a portion of a class bearing the same relation to the law equal opportunities in the business so limited.

While arbitrary discriminations by the legislature between persons standing in the same relation to the subject of legislation will not be sustained by the courts, it is firmly settled that "a law is general and constitutional when it applies equally to all persons embraced in a class founded upon some natural or intrinsic or constitutional distinction." (*City of Pasadena* v. *Stimson,* 91 Cal. 251, [27 Pac. 607].) "If the individuals to whom the legislation is applicable constitute a class characterized by some substantial qualities or attributes of such a character as to indicate the necessity or propriety of certain legislation restricted to that class, such legislation, if applicable to all members of that class, is not violative of our constitutional provisions against special legislation" (*Deyoe* v. *Superior Court,* 140 Cal. 476, 481, [98 Am. St. Rep. 73, 74 Pac. 28, 29], and cases there cited), and if it operates uniformly upon all the members of such class it necessarily has the "uniform operation" required by section 11 of article I of the constitution. The question whether the individuals affected by a law do constitute such a class is primarily one for the legislative department of the state, and it is hardly necessary to cite authorities for the proposition that when such a legislative classification is attacked in the courts every presumption is in favor of the validity of the legislative act. Where upon the facts legitimately before a court, it is reasonable to assume that there were reasons, good and sufficient in themselves, actuating the legislature in creating the class, though such reasons may not clearly appear from a mere reading of the law, such assumption will be made, and the legislation upheld. To warrant a court in adjudging the act void on this ground, it must clearly appear that there was no reason sufficient to warrant the legislative department in finding a difference and making the discrimination. (See *Grumbach* v. *Lelande,* 154 Cal. 679, 684, 685, [98 Pac. 1059].)

In the light of these well-settled rules, there is, in our judgment, no force in petitioner's claim.

The purpose of the act is apparent from its provisions. It was not the design to regulate or prohibit the carrying on in the usual way of the business of selling intoxicating liquor at regularly and permanently established places of business, established without reference to the fact that the place would be temporarily advantageous by reason of the presence of a camp

or assembly of men engaged in the kind of work mentioned in the act. That such established places of business might temporarily happen to be within a short distance of such a camp or assembly of men was not considered by the legislature as sufficient to call for any exercise of its power. The design was to protect the work described in the act and the men engaged therein from what is called in one of the briefs "the itinerant saloon," established temporarily in a certain place solely because of the proximity of such a camp or assembly. It seems clear to us that good and sufficient reasons may have appeared to the legislature for making this distinction. It is easily conceivable that it may have been made to appear that there were evils attendant on the maintenance of such places that did not exist in the case of the place permanently established and generally almost entirely dependent upon the residents of the community for its existence and support. The saloon man permanently established in a definite place, looking forward to a successful and profitable continuance of his business in the community, naturally has more incentive to conduct his business in an orderly and decent manner, and with due regard not only for such regulations as may be imposed by law, but also for the idea of the community as to what constitutes a respectable saloon, than has one who is only temporarily established in a place because of the presence of a camp containing a large body of laboring men and for the purpose of obtaining as much as he can of their earnings. The only incentive of the latter would ordinarily be to so conduct his business as to obtain the largest possible patronage and the greatest possible profit from the men on account of whose presence he had located his temporary establishment. It is unnecessary to dilate on this, for it must be obvious to any one in view of the nature of the business that there would ordinarily be such an essential difference between the two classes in the method of conducting the business that the legislature might well conclude that certain evils, seriously impairing the doing of work in which the public is interested and injuring the men engaging therein, exist in the case of the place so temporarily established, while they do not exist as to the permanently established place. As was said in *Grumbach* v. *Lelande,* 154 Cal. 679, [98 Pac. 1059], "it certainly is not made clear that good reason does not exist for the discrimination."

If it must be held that the legislature could make a distinction between the two classes we have discussed, as we are satisfied must be held, we can see no valid objection to the requirement that a liquor saloon or store shall have been established at least six months "prior to the establishment of such camp or assembly of men," in order to be considered a permanently established place. Such is substantially the meaning of the six months' provision. It is apparent that it would be practically impossible to guard against the mere temporary establishment in any other way than by requiring some such evidence of good faith on the part of the person engaging in such business. If the law excepted all places established at the time of the establishment of the camp, approximate knowledge of the site of a proposed camp could always be acquired by the party in sufficient time to enable him to locate within a convenient distance before its establishment. We cannot say that the legislature was not reasonably warranted in concluding that a "saloon or liquor store" established outside of a city or town and in the vicinity of the line of a proposed public work on which would be employed a large number of men, less than six months before the actual commencement of the work in that vicinity, would ordinarily be a mere temporary establishment, located solely with a view to the patronage of the men engaged in such work. The period of six months is not in itself an unreasonable time, and the legislature may well have been justified by the facts within its knowledge in fixing that period. The discrimination thus made between places established more than six months and those established less than six months is not to be taken as one arbitrarily made for the protection of or for the purpose of conferring any privilege on those of the former class, and it may be conceded that it could not be sustained if such were the apparent object. It is to be taken solely as one reasonably made in furtherance of the policy of the legislature to prohibit the maintenance of temporary establishments for the sale of intoxicating liquors near the "camp or assembly of men" described in the act, a policy, as we believe, fully warranted by its power in the matter of police regulations.

The question whether the distance prescribed, four miles, was a reasonable one, in view of the purpose of the act, was also, of course, a question for legislative determination. There is nothing to indicate that it is at all unreasonable.

Much reliance is placed by counsel opposing this law on the cases of *Ex parte Bohen,* 115 Cal. 372, [47 Pac. 55], and *Van Harlingen* v. *Doyle,* 134 Cal. 53, [66 Pac. 44], but neither of these cases appears to us to be in conflict with the views we have expressed. In both the court held that there were no differences which justified the classification attempted to be made. The Bohen case involved an ordinance prohibiting interments of bodies within the limits of the city and county of San Francisco, but excepting interments in such lots as had already been purchased for interment purposes. It was made to appear that in one cemetery alone more than eighteen thousand bodies could legally be interred under the exception, while the capacity of the unsold lots in the same cemetery was sufficient for only thirty-six hundred bodies. It was held substantially that no good reason could be conceived why the one class of burials should be more offensive or more opposed to public policy than the other, and allowed while the other was prohibited. The case of *Van Harlingen* v. *Doyle* involved the validity of a provision of law prohibiting the procuring by county officers of any supplies, printing, stationery, or books from any person or firm "whose paper has not been established or whose place of business has not been established in the county for one year or more prior to" the time when the prices therefor were fixed by the board of supervisors. It was substantially held that all merchants and publishers stood in the same relation to supplies and advertising for the county and could not be arbitrarily classified by the period of time during which they had engaged in business in the county. No natural or intrinsic or constitutional basis for any such distinction could be conceived. The essential difference between those cases and this is that here there is sufficient warrant for finding a natural and intrinsic difference between the classes created by the legislative department.

What we have said shows very clearly that the provision excepting from the operation of the act sales "at any winery, licensed brewery or distillery where the same is manufactured" cannot be held to affect the uniformity of the operation of the law. With relation to the evils sought to be prevented, the distinction between such places and the places prohibited is too clear to require discussion.

The writ is discharged and the petitioner remanded to the custody of the sheriff of Kern County.

Shaw, J., Sloss, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred.