THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JOHN
McWEENEY, JOHN E. OWENS, ANTHONY CZARNECKI,
MICHAEL ZIMMER and HERMAN F. SCHUETTLER, Ap-
pellants.

*Opinion filed June 18, 1913.*

1. CONSTITUTIONAL LAW—*what constitutes compliance with the
provision for printing amendments.* Where a bill introduced in
the senate is printed and passed in its original form but is amended
in the house and passed after the bill and its amendments have
been printed and is then returned to the senate and passed as
amended, the constitution is complied with although the bill and
the amendments were not re-printed in the senate.

2. SAME—*statute authorizing injunctions on Sunday was regu-
larly enacted.* Section 23 of the Injunction act, (Rev. Stat. 1874,
p. 581,) authorizing the granting of a writ of injunction on Sun-
day if the conditions specified in such section exist, was regularly
enacted.

3. INJUNCTION—*issuing an injunction without notice does not
render the injunction void.* The question whether an injunction
must be issued immediately and without notice must be determined
by the court, judge or master in chancery from the facts appear-
ing in the bill and affidavit; and even if the conclusion to issue
the writ without notice is erroneous, the injunction is not void
and cannot be rightfully disobeyed on that ground.

4. SAME—*party cannot disregard injunction though it is im-
providently issued.* If the judge to whom an application for an
injunction is presented on Sunday has jurisdiction to issue an in-
junction, upon a proper bill and affidavit, in the class of cases to
which the bill applies, the fact that the injunction may be improvi-
dently granted does not authorize the defendants to disregard it.

5. SAME—*alleged defective bill for injunction must be tested by
demurrer and not by disobedience.* If a bill for an injunction is
deemed by the defendants to be defective the bill must be tested
by demurrer and not by disobedience to the writ.

6. COURTS—*the statutory jurisdiction of county courts is lim-
ited.* County courts are given certain jurisdiction by the consti-
tution but all other jurisdiction must be conferred by statute, and
if conferred by statute the jurisdiction is limited to such cases as
are specified in the statute.

7. SAME—*jurisdiction of the county court in election matters
is limited.* The jurisdiction of the county court in election mat-

259 — 11

ters is derived from the statute, and in its exercise the court is an inferior court of limited jurisdiction.

8. SAME—*the county court has no authority to take charge of organizing county convention.* The power of the county court, under the City Elections law and the Primary Elections act of 1910, with reference to election matters, does not justify that court, or its judge, in taking jurisdiction to fix the hour or place of meeting for a county convention of precinct committeemen nor in assuming charge of its organization.

9. SAME—*court can only exercise its functions at the place appointed by law.* Orders entered or given by a county judge at a convention hall in furtherance of his attempt to take charge of and authorize a county convention are no protection to police officers or other persons who obey them, as courts are not migratory and can only exercise their functions at the place appointed by law.

10. SAME—*unless authorized by statute, courts cannot interfere with political matters.* Courts cannot be drawn into political contests of any sort unless required by statute to interfere, and any injunction for the purpose of restraining or controlling acts of a political nature is void unless authorized by statute and may be disregarded without accountability to the court.

11. SAME—*mere fact that a political question is involved does not deprive the court of jurisdiction.* Injury to property, whether actual or prospective, is the foundation upon which the jurisdiction of courts of equity rests, and, if there is foundation for equitable jurisdiction, the fact that the determination of the controversy may depend upon the decision of a political question does not deprive the court of jurisdiction.

12. SAME—*when property right is merely incidental to political question.* The fact that the chairman of a county central committee, who is the proper officer to fix the time and place for the convention of precinct committeemen, has, acting for his party, leased a building for a day and has paid part of the rent and obligated himself for the balance and for damages to the building, does not give him such a property right as authorizes a court of equity to issue an injunction to enforce a provision of the lease that no one shall enter the building without his permission, as in such case the property right is merely incidental to the political question and the courts are not authorized to assume jurisdiction.

13. CONTEMPT—*answer does not purge party of civil contempt.* In case of a civil contempt the court may hear proofs to contradict the answer of the party charged with the contempt, and it is not material whether the fine or imprisonment is to compel compliance with an injunction or is in the nature of a punishment.

APPEAL from the Superior Court of Cook county; the Hon. M. L. MCKINLEY, Judge, presiding.

WILLIAM H. SEXTON, Corporation Counsel, CHARLES H. MITCHELL, JAMES HARTNETT, and JOHN STELK, (EDGAR B. TOLMAN, WILLIAM DILLON, and I. T. GREENACRE, of counsel,) for appellants.

ALFRED S. AUSTRIAN, and EDMUND D. ADCOCK, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On April 17, 1912, John McGillen filed in the superior court of Cook county his petition, sworn to and supported by affidavits of two other persons, for a rule on the appellants, John McWeeney, John E. Owens, Anthony Czarnecki, Michael Zimmer and Herman F. Schuettler, to show cause why they should not be attached for contempt of court in violating an injunction granted by a judge of said court in a suit in which John McGillen was complainant and McWeeney, Czarnecki, Zimmer and others were defendants, enjoining the defendants from interfering with the possession, occupancy, enjoyment and control by the complainant of the armory; drill hall and gallery of the Seventh regiment infantry, Illinois National Guard, in Chicago. The rule was granted and the appellants answered, admitting violations of the injunction but alleging that their acts did not constitute contempt of court, for the reason that the injunction was void for want of jurisdiction in the judge to order it. There was a hearing, and the appellants were severally fined $500 each and were committed to the county jail of Cook county until the fines should be paid, but the imprisonment was not to exceed six months. The convictions and orders being several, separate appeals were taken by the appellants, but as they depend upon the same

evidence and involve the same questions they have been consolidated.

The appellants ask for a reversal of the judgments on the ground that the injunction was void because (1) it was granted on Sunday, and the statute purporting to authorize the issue of injunctions on that day is void for the reason that it was not enacted in compliance with the constitution, and in the absence of the statute the injunction could not be granted on that day unless in case of necessity, which did not exist, and also for the reason that the writ was issued without notice and by a judge instead of a court; (2) the conviction of appellants for disobeying the injunction violated the fourteenth amendment to the constitution of the United States and section 4 of article 4 of that constitution, which provides that the United States shall guarantee to every State in the Union a republican form of government, and shall protect each of them against invasion on application of the legislature (or of the executive when the legislature cannot be convened) against domestic violence; (3) the injunction was void as an undue and unwarranted interference with an order made by the county court of Cook county, of which appellant John E. Owens was judge; (4) the relief granted by the injunction was political in its character and not to protect property rights, and courts of equity have no jurisdiction to interfere in political matters.

There was practically no dispute, on the hearing, as to the facts. The Primary act of 1910 (Laws of 1909-10, p. 46,) provides that primaries shall be held for the election of precinct committeemen, and the election is to be followed by a meeting of the committeemen at the county seat, at which they are to organize by electing from their own number a chairman, and, either from among their own number or otherwise, such officers as the committee may deem necessary or expedient. This meeting is to be known as the county convention, and on September 15, 1910, at

the first convention held under that law, John McGillen was elected chairman of the county central committee and became chairman of the county convention. On April 9, 1912, a primary election of the democratic party was held in Cook county, at which there was elected in each precinct a precinct committeeman, there being about fifteen hundred in the aggregate. The law provides that on the first Monday after the April primary a meeting of the committeemen constituting the county convention shall be held at the county seat, but no hour is fixed. No provision is made for organizing the convention other than the electing of a chairman and such other officers as the committee may deem necessary or expedient. On April 11, 1912, McGillen, acting as chairman of the county central committee, procured a lease of the armory, drill hall and gallery of the Seventh regiment infantry, at Thirty-fourth street and Wentworth avenue, in Chicago, for Monday, April 15, 1912, at a rental of $250, of which he paid from his own funds $50 and agreed to pay the balance of $200 on April 16, 1912. He also bound himself to pay for the chairs, band and other expenses, to have the building cleared before noon of April 16, and to repair any and all damage done to the premises. The lease recited that it was made between the commanding officer of the regiment and John McGillen, chairman of the democratic committee of Cook county; that the armory was to be used for the purpose of organizing the democratic party, composed of the precinct committeemen only, and for no other purpose, and that no persons other than the precinct committeemen as recognized by McGillen, and those presenting guest cards, should be admitted. On April 12, the next day after procuring the lease, McGillen caused to be published a call for a meeting of the county central committee, consisting of the precinct committeemen, to be held at the armory on April 15, 1912, at 10:30 o'clock A. M., and to be known as the county convention of the democratic party of Cook county. There were two hostile

factions of the democratic party in Cook county, McGillen belonging to one and some of appellants to the other. In the afternoon of Saturday, April 13, 1912, a petition signed by precinct committeemen was presented to appellant John E. Owens, sitting in the county court of Cook county, asking the court to instruct the petitioners where to hold the convention and to designate the hour for the holding thereof, and asking the judge to take charge, in person, of the preliminary organization of the convention, or to appoint some person to act as temporary chairman for the purpose of a roll call and the election of a chairman. The appellant Owens entered an order, reciting that having taken the petition into consideration, "and the court, from his own knowledge, taking cognizance of the danger, riots and unlawful disturbances of the peace, endangering the peace of the people of the State of Illinois, and the court acting in the matter of the above petition as a conservator of the public peace," ordered that the appellant Anthony Czarnecki, the then republican election commissioner of the city, should on Monday, April 15, 1912, proceed with due speed to the armory, and as an officer of the county court and conservator of the public peace should proceed in due form to call to order the democratic convention; that he should take with him such deputy sheriffs and police officers as should be ample and abundantly sufficient to preserve the peace and quiet of the convention; that he should admit none but precinct committeemen having proper credentials, except as to his aids to preserve the public peace and good order; that he should exclude and eject all other persons, and upon the obtainment of complete order should proceed to call the roll, and that he should take with him W. S. Kaufman and Fred T. Glade, members of the republican party, to act as secretaries and record the votes. The sheriff was directed to provide Czarnecki with sufficient deputy sheriffs to carry out the order and the chief of police was directed to detail such number of policemen, in

uniform, as Czarnecki might require, to act under the direc-
tion of Czarnecki. When Czarnecki should complete the
organization of the convention and the temporary officers
should be selected and installed he was to retire. On the
next day, Sunday, April 14, McGillen presented his bill
to a judge of the superior court, alleging these facts, and
that Czarnecki, the republican, accompanied by deputy sher-
iffs and police officers, intended to act as chairman of the
county convention, to exclude persons from the hall who
were entitled to enter, to prevent the complainant from ex-
ercising control over the armory, which he had leased, or
the persons who should enter the same, and not to permit
complainant to enjoy the rights and privileges accorded him
under the terms of his contract and lease, and that the
property in the armory would be injured and destroyed and
the complainant become liable and obligated to pay for the
same. The injunction was granted and the writ issued,
commanding the defendants to abstain from the threatened
wrongful acts. The writ was served on Owens, McWeeney
and Czarnecki on Sunday and on Zimmer early Monday
morning. The appellant Owens, after being served with
the writ, issued from the office of a newspaper a manifesto
in the form of an interview, in which he declared that he
would hold in contempt of court any person, officer or pub-
lic official, including the judge who issued the writ of in-
junction, or any judge of the circuit or superior court, who
attempted to interfere with the order of his court, and af-
firming that his court was the court of last resort and of
exclusive jurisdiction in all election matters. On the same
Sunday night Owens delivered a paper to the bailiff of his
court, addressed to Peter M. Hoffman and John McGillen,
"individually and as so-called chairman," etc., notifying
them that he had been informed of the filing of the bill in
equity, whereby an attempt was made to interfere with and
restrain the due execution of his order, and commanding
them forthwith to appear before him in his court room to

instantly then and there purge themselves of the charge of contempt of court in contumaciously attempting to interfere with his order while the same was in due process of execution. The appellant McWeeney was chief of police of the city of Chicago and Herman F. Schuettler was his assistant. Early on Monday morning, April 15, McWeeney and Schuettler detailed about three hundred police officers to the convention hall and Schuettler took charge of them. They arrived at the armory a little before ten o'clock. The appellant Michael Zimmer was sheriff, and he also went to the armory with ninety deputy sheriffs and reached that place about nine o'clock. A great crowd assembled in the street and around the doors of the armory, which were locked. Officers of the Seventh regiment were present, and Capt. Octigan, representing the regiment, stated that he held possession of the armory for McGillen, the lessee. About eleven o'clock McGillen presented himself before the door for admission and demanded possession of the premises from Czarnecki, Zimmer and Schuettler, and the possession was refused. A few minutes after noon the appellant John E. Owens arrived on the scene and assumed command. He told Capt. Octigan that if the doors were not opened he would instruct the chief of police to break them down. He then directed the police to break in the front door, take the man inside the building and lock him up, and that he would see that his orders were enforced. The door was broken down with an axe by the police, and after entering the building Owens ordered the arrest of Capt. Octigan and directed his bailiff to take him to Owens' chambers and keep him there until the further order of the court. Octigan got out of the chambers by a writ of *habeas corpus.* Owens also caused the arrest of John J. Bolger, a captain of the Seventh regiment, who was also taken by his direction to his chambers and imprisoned there.

The injunction was granted on Sunday, and section 23 of chapter 69 of the Revised Statutes of 1874 provides that

writs of injunction may be granted on Sunday by any offi-
cer authorized by law to grant such writs, when the con-
ditions specified in that section are complied with. The
affidavit filed with the bill in this case was a sufficient com-
pliance with the statute. The appellants offered evidence
that the bill for the act was introduced in the senate, where
it was printed and passed in its original form; that it was
amended in the house by the addition of section 23 and
other sections, and was there printed with the amendments
and passed; that it was returned to the senate and passed
as amended but was not again printed in the senate. The
purpose of printing a bill was pointed out in *Neiberger* v.
*McCullough,* 253 Ill. 312, and that purpose was fulfilled in
this case. The provision is, that a bill and all amendments
shall be printed before the vote is taken on its final passage,
and the bill in question was printed, with all its amend-
ments, before the vote was taken on its final passage in
either house. After being so printed it was returned to the
senate, and when the bill, so printed, was returned to the
senate before its final passage in the senate the constitution
was complied with. The other proposition could not be
sustained if the statute were void, since the bill and affi-
davits showed a case that brought it within the rule exist-
ing in the absence of a statute. (*Langabier* v. *Fairbury,
Pontiac and Northwestern Railroad Co.* 64 Ill. 243.) The
answer to the argument that the injunction was void be-
cause it was ordered without notice and the affidavit did not
show that notice could not be given without serious dam-
age to the complainant, is, that the injunction would not
be void for any insufficiency of that kind. The question
whether an injunction shall be issued immediately and with-
out notice must be determined by the court, judge or master
from the facts appearing in the bill and its accompanying
affidavit, and if the conclusion should be erroneous, the
party enjoined cannot refuse to obey the injunction on that
ground. (*Christian Hospital* v. *People,* 223 Ill. 244.) A

bill which is claimed to be defective must be tested by a demurrer in the court and not by disobedience to the writ. The fact that an injunction is improvidently granted will not authorize a party to disregard it, if the court, judge or master had jurisdiction to make the order upon a sufficient bill and affidavit. (*O'Brien* v. *People,* 216 Ill. 354; *Franklin Union* v. *People,* 220 id. 355; *Flannery* v. *People,* 225 id. 62; *O'Connor* v. *Board of Trustees,* 247 id. 54.) Sunday is not a day for the holding of courts, and the judge was authorized to grant writs of injunction. It was for him to determine whether the bill and affidavit were sufficient, provided he had jurisdiction in the class of cases to which the bill applied.

As to the questions arising under the Federal constitution, counsel content themselves with saying that the provisions of the constitution speak for themselves and do not call for argument, and it will not be necessary to give any further attention to them.

The appellants could not justify their disobedience of the injunction by virtue of the order made by the appellant Owens. County courts are given certain jurisdiction by the constitution but all other jurisdiction must be conferred by statute, and if conferred by statute the jurisdiction is limited to such cases as are specified in the statute. The jurisdiction of the county court in election matters is derived from the statute, and in its exercise the court is an inferior court of limited jurisdiction. (*Kinsloe* v. *Pogue,* 213 Ill. 302.) Under the City Election law and the Primary act of 1910 the county court of Cook county has a limited jurisdiction to act concerning certain specified matters and to hear and determine certain enumerated questions. The right to determine contests between precinct committeemen, to appoint members of the board of election commissioners and to act on questions concerning registration, or any other of the things specified in the statutes, does not include any authority to act in respect to other matters. There is noth-

ing in any statute from which it could be inferred that the
county court or its judge has jurisdiction to fix the hour or
place of a county convention or to take charge of its organi-
zation. The Primary act of 1910 provides that the county
central committee shall meet at the county seat and proceed
to organize by electing from its own number a chairman
and such other officers as may be deemed advisable by the
convention. In determining election contests, whether of
precinct committeemen or other officers, the court is only
empowered to determine who was elected. It cannot even
pass on the validity of the election or the qualifications of
a candidate to hold the office. (*Greenwood* v. *Murphy,* 131
Ill. 604; *Dilcher* v. *Schorik,* 207 id. 528.) Owens had
no authority to organize the convention or determine who
should organize it, and the making of the order and per-
sonal attempt to enforce it were an inexcusable disregard
of the law and the statutes. The order had a double aspect,
as an attempt to regulate the holding and organization of
the convention and also to exercise the power of a con-
servator of the peace, in which capacity the order recited that
the judge was acting. All judges of courts of record within
their respective jurisdictions, and justices of the peace, are
conservators of the peace, but their powers in that respect
give them no right to organize conventions, break down
doors for the purpose or order the arrest of persons using
disrespectful language toward them, none of which acts
bear any relation to the duties of a peace officer. Of course,
Owens did not act as a court at the armory, since courts
are not migratory and can only exercise their functions in
the places appointed by law. The order entered of record
and the orders given by Owens at the armory were no pro-
tection to any of the appellants, and the sheriff and police
officers were not justified in obeying them. The order, on
its face, showed a lack of jurisdiction, and the advice of
attorneys is never a justification for a contempt.

If the injunction was void because of a want of jurisdiction in the judge to grant the writ it could be disregarded with impunity, and it is contended that the judge was without jurisdiction.in this case because the bill sought to interfere with political rights. The general rule is well established that the judicial department of the government has no right to interfere with or attempt to control a citizen in the exercise of political rights unless the jurisdiction is expressly given by statute or by clear implication. On account of the grave consequences which might result both to the courts and the people if the courts were to take jurisdiction of political matters, it has always been held that they have no right to interfere in those matters at all. The courts cannot be drawn into political contests of any sort or description unless required by statute, and any injunction for the purpose of restraining or controlling acts of a political nature is void and may be disobeyed without accountability to the court. (*Moore* v. *Hoisington,* 31 Ill. 243; *People* v. *City of Galesburg,* 48 id. 485; *Dickey* v. *Reed,* 78 id. 261; *People* v. *Barrett,* 203 id. 99; *People* v. *Rose,* 211 id. 252; *Luther* v. *Borden,* 48 U. S. 1.) Injury to property, whether actual or prospective, is the foundation upon which the jurisdiction of courts of equity rests, and if there is a foundation for equitable jurisdiction, the fact that the determination of the controversy may depend upon the decision of a political question will not deprive the court of jurisdiction. (*Village of Morgan Park* v. *City of Chicago,* 255 Ill. 190.) Under that rule it is contended that McGillen had a property right in the armory by virtue of his lease; that he had a standing in a court of equity, like any other property holder, to protect his property right by injunction against a threatened interference, and that the protection of the property right carried with it a right to say who should or should not enter the armory during the time appointed for the convention while he was lessee. It is true that he had a lease of the premises and paid part of

the rent and was liable for the balance as well as for any damage to the property, but the purpose for which his right was acquired was the holding of a democratic convention and the exercise of political rights.   He was chairman of the county central committee until a new one should be elected, and was the proper officer to fix the place and time at which the convention should be held and to preside over the preliminary organization of the convention.   He made himself liable for the rent and for the repair of damages, but did it as representing the county convention of the democratic party and took the lease for the use of the members of the convention.   He stated in the lease that he was to use the armory for the purpose of organizing the democratic party, composed of precinct committeemen, only, and for no other purpose.   His published notice was for a meeting of the county central committee of the democratic party in the armory on April 15 at 10:30 o'clock A. M., and the meeting was to be known as the county convention of that party. While the lease provided that no one should enter the building except by his permission, he had no right to exclude anyone who was actually a precinct committeeman, and if a court could decide who should be allowed to attend a political convention or could authorize McGillen to decide, there would be a serious interference with political rights. There is, perhaps, no political right which can be exercised without some use of property or some connection with a property right.   Places must be provided for elections, and it is quite natural that some one should become personally responsible for rent, whether for that purpose or for holding a political convention, but that fact would not authorize interference by the court to control the premises and determine who should enter.   Courts of equity look to substance and not to mere form, and the only purpose of the provision of the lease that no one should enter without Mc-Gillen's permission, and the attempted enforcement of that provision by injunction, was an interference with political

rights. Instead of a political question being incidental to the property right, the property right was incidental to the political question. A court of equity had no jurisdiction to grant the injunction.

Counsel for the appellant Czarnecki contend that by his answer he purged himself of the alleged contempt and that the court could not hear evidence to contradict his answer. That is not the rule in the case of civil contempts, (*Hake* v. *People,* 230 Ill. 174,) and the question whether a fine or imprisonment is to compel compliance with the injunction or is in the nature of punishment makes no difference. (*Rothschild & Co.* v. *Steger Piano Co.* 256 Ill. 196.) In either case the court may hear proofs to contradict the answer of the party charged with the contempt.

The court erred in adjudging the appellants guilty of contempt. The judgments are reversed and the cause remanded.

*Reversed and remanded.*