[Crim. No. 1041.   Second Appellate District, Division One.—January 19, 1924.]

## In the Matter of the Application of WILLIAM G. BRADY for a Writ of Habeas Corpus.

[1] COURTS — SESSIONS — PLACE OF HOLDING. — The legislature having spoken as to the place at which sessions of the superior court may be held, the rule that the statement of one thing is the exclusion of another is applicable and permits no sessions of the superior court except as provided by the statute.

[2] ID.—STATUTORY CONSTRUCTION—GENERAL LAW—CLASSIFICATION OF INDIVIDUALS.—In order that a statute be a general law it is not necessary that it apply to all the people in the state, but if it affect all individuals falling within a proper classification of them the constitutional requirement is met.

[3] ID.—CONSTITUTIONAL LAW—ARBITRARY CLASSIFICATION.—While a great deal of latitude is rightly accorded legislative acts and the presumption of legality should obtain, nevertheless an arbitrary classification, or one based purely upon whimsical or fanciful reasons, is not a compliance with the constitutional mandate; but wherever the distinction is one for which the constitution expressly provides, or is one which on its face appears to be perfectly obvious, or is yet one for which there is some substantial reason for its existence, the constitutional provision is not violated.

[4] ID.—ADDITIONAL COURTS IN COUNTY OF FIRST CLASS—UNCONSTITUTIONAL LEGISLATION.—The part of the amendment of sections 73

and 142 of the Code of Civil Procedure providing that "in counties of the first class at least one session of the superior court shall be held in each city of said county containing a population of not less than fifty thousand . . . wherein the city hall of said city is not less than fifteen miles distant from the site of the county courthouse," is unconstitutional, in that it is special and local, is not uniform in its operation, confers special privileges upon a class of citizens which, upon the same terms, are not granted to all citizens, and a general law could have been made applicable.

APPLICATION for a Writ of Habeas Corpus to secure the release of petitioner from detention upon a commitment for contempt of court.   Writ granted.

The facts are stated in the opinion of the court.

Charles D. Wallace for Petitioner.

Asa Keyes, District Attorney, A. H. Van Cott, Deputy District Attorney, P. E. Keeler, Spicer, Meacham & Mason, Knight, Lane & Goddard, McWhinney & Clock and Doyle, Clark & Thomas for Respondent.

Edward T. Bishop, County Counsel, and Roy W. Dowds, Deputy County Counsel, *Amici Curiae.*

HOUSER, J.—This is an application for a writ of *habeas corpus* based upon the alleged illegal detention of petitioner by the sheriff of Los Angeles County, acting under an order of the superior court, in and for said county, committing petitioner for a contempt of said court.

It appears that in an action pending before one of the departments of the superior court sitting in the city of Long Beach, in accordance with an order made by the judge of said department, petitioner had been served with a *subpoena duces tecum.* Petitioner failed and refused to respond to the said subpoena and was thereafter brought before the court upon an attachment.   Thereupon, the court adjudged petitioner guilty of a contempt in said matter, and sentenced him to pay a fine.   In default of such payment he was remanded to the custody of the sheriff.

Petitioner attacks the jurisdiction of the superior court, basing his objection on the alleged unconstitutionality of

amendments of section 73 and section 142 of the Code of
Civil Procedure under and by virtue of which the said su-
perior court was sitting in the city of Long Beach. Among
other things, section 142 of the Code of Civil Procedure, as
amended, provides: "That in counties of the first class at
least one session of the superior court shall be held in each
city of said county containing a population of not less than
fifty thousand . . . wherein the city hall of said city is not
less than fifteen miles distant from the site of the county
courthouse." Section 73 of the Code of Civil Procedure, as
amended, contains language to the same effect.

It is understood that the city of Long Beach has a popula-
tion of more than fifty thousand people, and that its city
hall is located more than fifteen miles from the site of the
county courthouse of Los Angeles County, being the county
in which the city of Long Beach is situated.

With reference to the limitation on the power of the legis-
lature to enact laws of the character of the act in question,
the constitution provides:

"All laws of a general nature shall have a uniform opera-
tion." (Sec. 11, art. I.)

"The legislature shall not pass local or special laws . . .
where a general law can be made applicable." (Subd. 33,
sec. 25, art. IV.)

" . . . nor shall any citizen, or class of citizens, be granted
privileges or immunities which, upon the same terms, shall
not be granted to all citizens." (Sec. 21, art. I.)

There is no constitutional provision which fixes either the
time when or the place where the several superior courts
shall sit, but section 73 of the Code of Civil Procedure pro-
vides that "they shall hold their sessions at the county seats
of the several counties, or cities and counties, except as
otherwise provided by section one hundred forty-two of this
code," and which section, in addition to what has heretofore
been set forth, authorizes the judge or judges of any county
to change the location of the court when war, insurrection,
pestilence, or other public calamity, etc., may render it
necessary, or, in the discretion of the court, whenever neces-
sary, or advisable, at any place in the county not less than
120 miles distant from the county seat. It is not contended
that the session of the superior court sitting within the city
of Long Beach comes within the terms of either of said ex-

ceptions, and it is conceded by counsel representing the respective parties that if such act is unconstitutional the order of commitment of petitioner is void.

[1] The legislature having spoken as to the place at which sessions of the superior court may be held, the rule that the statement of one thing is the exclusion of another is applicable and permits no sessions of the superior court except as provided by the statute. (*Whitener* v. *Balknap & Co.*, 89 Tex. 273 [34 S. W. 594]; *Williams* v. *Reutzel*, 60 Ark. 155 [29 S. W. 374]; *Coulter* v. *Routt County*, 9 Colo. 258 [11 Pac. 199]; *Von Schmidt* v. *Widber*, 99 Cal. 511 [34 Pac. 109]; *Shepherd* v. *Superior Court*, 54 Cal. App. 673 [202 Pac. 466]; *Patton* v. *State*, 160 Ala. 111 [49 South. 809]; *People* v. *McWeeney*, 259 Ill. 161 [Ann. Cas. 1916B, 34, 102 N. E. 233]; *Carter* v. *State*, 100 Miss. 342 [Ann. Cas. 1914A, 369]; *Rhodes* v. *Bell*, 230 Mo. 138 [130 S. W. 465]; *Shold* v. *Van Treeck*, 82 Neb. 99 [117 N. W. 113].) Even in the absence of express statutory requirement that the sessions of the court be held at the county seat, it has been held that a universal practice to do so gave the practice the legality of positive law, and that an order of the court made while sitting at a place other than the county seat was void. (*Board of Commissioners* v. *Gwin*, 136 Ind. 562 [22 L. R. A. 402, 36 N. E. 237].)

If it be determined that the law here under consideration is general in its nature and that it has a uniform operation, necessarily it is not a special law. [2] At various times the supreme court of this state has announced the rule in substance that in order that a statute be a general law it is not necessary that it apply to all the people in the state, but if it affect all individuals falling within a proper classification of them the constitutional requirement is met. (*Pasadena* v. *Stimson*, 91 Cal. 251 [27 Pac. 604]; *McDonald* v. *Conniff*, 99 Cal. 386 [34 Pac. 71]; *Darcy* v. *Mayor of San Jose*, 104 Cal. 642 [38 Pac. 500]; *Deyoe* v. *Superior Court*, 140 Cal. 476 [98 Am. St. Rep. 73, 74 Pac. 28]; *Title etc. Restoration Co.* v. *Kerrigan*, 150 Cal. 289 [119 Am. St. Rep. 199, 8 L. R. A. (N. S.) 682, 88 Pac. 356]; *Ex parte King*, 157 Cal. 161 [106 Pac. 578].)

The statute here does not purport to affect all the people, nor all the counties of the state, but concerns counties of the first class only; and a proper inquiry in that regard is

whether or not the legislature was warranted in making such a classification. [3] While a great deal of latitude is rightly accorded legislative acts and the presumption of legality should obtain, nevertheless an arbitrary classification, or one based purely upon whimsical or fanciful reasons, is not a compliance with the constitutional mandate; but it is well settled that wherever the distinction is one for which the constitution expressly provides, or is one which on its face appears to be perfectly obvious, or is yet one for which there is some substantial reason for its existence, the constitutional provision is not violated. As has been frequently said by our supreme court, the distinction must rest on either a constitutional, or a natural, or an intrinsic difference.

[4] It is apparent at the most superficial investigation of the statute that it is not general in the sense that it directly affects all of the people of the state. If it at all comes within a requirement that laws of a general nature shall have a uniform operation, it must be because of its applicability to a class. In this respect the act provides that it shall be effective "in counties of the first class," thereby segregating one class of counties from each and all of the other classes of counties of the state and making the proposed law operative in one class of counties only. The act provides an additional classification in that it applies, first, as to cities of not less than fifty thousand population; and, secondly, to such cities of such population only whose city halls are over fifteen miles distant from the site of the county courthouse.

But it is contended that there is no authority vested in the legislature to classify counties by population, excepting for the sole purpose of establishing the compensation and fees of county officers. (Sec. 5. art. XI, Const.) For such purpose the legislature has by other statutes brought about such a classification. It has said (sec. 4006, Pol. Code) that counties containing a population of five hundred thousand persons and over shall belong to and be known as counties of the first class; that counties containing a certain lesser population shall be counties of the second class, and so on down through the list of counties of the state, giving to each group a designated classification. The court may take judicial notice of the fact that Los Angeles County is the only

county of the first class in the state. (*People* v. *Wong Wang*, 92 Cal. 277 [28 Pac. 270]; *People* v. *Williams*, 64 Cal. 87 [27 Pac. 939]; *Welsh* v. *Bramlet*, 98 Cal. 219 [33 Pac. 66].) In the case of *Pratt* v. *Browne*, 135 Cal. 651 [67 Pac. 1082], an act fixing the salary of the official reporter in a county of the thirtieth class was under consideration. In the course of the opinion it is said: "It is the same as if Ventura County had been mentioned by name. No change of words or phrases, or calling Ventura County by another name, can change the result. The portion of the act in dispute must therefore be considered as an act fixing the salary of the reporter (whoever he may be) of Ventura County at the sum of one hundred dollars per month." So this court may say that the act here in question is the same as though, instead of using the designation "first class," the act had provided that in Los Angeles County a session of the superior court shall be held at cities in said county containing a population of not less than fifty thousand people, etc.. In the case to which reference has just been made, the court held that the act in question, being applicable to one county only and not founded upon any natural, intrinsic, or constitutional distinction, and no reason appearing as to why the act was not made to apply generally to all classes of counties, was special and local and therefore unconstitutional. The same conclusion was reached in the case of *Marsh* v. *Hanley*, 111 Cal. 368 [43 Pac. 975], where the court had under consideration an act relating to primary elections, to be confined in its operations to counties of the first and of the second class. The court said:

"There can be no question that the act is local and special, since, by its terms, it is to 'apply to, take effect in, and be in force only in counties of the first and second classes,' that is to say, in San Francisco and Los Angeles. (Stats. 1895, sec. 26, p. 218.)

"The Constitution allows the classification of counties according to population for the purpose of regulating the compensation of county officers in proportion to their duties (Const., art. XI, sec. 5), and for that purpose a classification has been established under which San Francisco falls into the first class and Los Angeles falls into the second class. But the fact that these and the other counties of the state have been classified for a purpose which the Constitu-

tion recognizes as a proper and necessary one does not re-
lieve a law relating to other and distinct matters from the
objection that it is local and special if, by its terms, it is
limited in its application or operation to one or more classes
of counties less than the whole. (*Dougherty* v. *Austin*, 94
Cal. 620 [16 L. R. A. 161, 28 Pac. 834, 29 Pac. 1092];
*Welsh* v. *Bramlet*, 98 Cal. 219 [33 Pac. 66]; *Pasadena* v.
*Stimson*, 91 Cal. 238 [27 Pac. 604]; *Bloss* v. *Lewis*, 109 Cal.
493 [43 Pac. 1081]; *Turner* v. *Siskiyou County*, 109 Cal.
332 [42 Pac. 434]; *Darcy* v. *Mayor of San Jose*, 104 Cal.
642 [38 Pac. 500]; *Denman* v. *Broderick*, 111 Cal. 96 [43
Pac. 516]. This act, therefore, not being a regulation of
the compensation of county officers, is local and special, not-
withstanding it embraces two counties, each of which consti-
tutes one of the classes defined by the County Government
Act; and the only question to be determined is whether or
not the subject of the act is one of those as to which special
and local legislation is inhibited by the Constitution.''

In the case of *Welsh* v. *Bramlet*, 98 Cal. 219 [33 Pac. 66]
the court was considering the constitutionality of certain
sections of the County Government Act of 1891, which pro-
vided that the assistants of district attorneys of counties in
the eighth class should be paid by the county, and the court
said, in part: ''The legislature has not the general authority
to enact laws for the counties by classes, nor is it authorized
to make a classification of counties for any purpose of legis-
lation, except for the purpose of enabling it to regulate the
compensation of the county officers for whose election or
appointment it shall provide. (*San Luis Obispo Co.* v.
*Graves*, 84 Cal. 71 [23 Pac. 1032].) Whenever it attempts
to enact a law for one or more of the counties of the state
upon subjects that it is directed to provide for by general
laws, or which are to form part of a uniform system for
the whole state, whether such counties are designated di-
rectly by name, or by reference to a class into which they
have been placed for other subjects of legislation, it infringes
these provisions of the Constitution. We must take judicial
knowledge that there is only one county in the state whose
population places it in the eighth class, and if an act is
passed by the legislature that is applicable to only one
county in the state, it does not cease to be a local act by
reason of the fact that it purports to be applicable to a

class of counties which the legislature is not authorized to create for the purpose of such regulation, and of which that county constitutes the only member.''

The legal propriety of legislation of the character here in question is commented upon in the case of *Turner* v. *County of Siskiyou,* 109 Cal. 332 [42 Pac. 434], where the court was considering the constitutionality of an act which provided that in counties of the twenty-eighth class alone every person subpoenaed as a witness in a criminal case should be entitled to the same *per diem* and mileage as jurors in a like case. The court said, in part: ''This provision is clearly unconstitutional and void. It does not apply to counties of any other class. . . . The difficulty is not removed by the fact that the counties are classified, and that the provision applies to all counties of a certain class; because, under section 5 of article XI, counties may be classified *only* for the purposes of regulating the compensation of certain public officers therein enumerated. . . . The provision in question in the case at bar is local and special, because it is not in force in all parts of the state, and does not affect equally either all the people, or all individuals of a class.'' And, to the same effect, see *Bloss* v. *Lewis,* 109 Cal. 493 [41 Pac. 1081], *San Luis Obispo* v. *Graves,* 84 Cal. 71 [23 Pac. 1032], *Payne* v. *Murphy,* 18 Cal. App. 446 [123 Pac. 350].

The act does not conform to the constitutional requirements of a general law, either as affecting the entire state or as applied to a class, for the reason that the class designated by the statute, although not expressly forbidden by the provision of the constitution, is impliedly excluded for any purpose other than that of regulating the compensation and fees of county officers. Paraphrasing a part of the language used by Chief Justice Beatty in *Marsh* v. *Supervisors, supra,* there can be no question that the act which we are here considering is local and special, since, by its terms, it applies to, takes effect in, and is expected to be in force only in a county of the first class; that is to say (as is pointed out in *Pratt* v. *Browne, supra*), in the county of Los Angeles.

A strictly general law, according to the constitutional provision, must have a uniform operation. It is permitted to depart from that requirement as to every individual or class in the state only when the subject matter of the act is based

upon some constitutional or natural or intrinsic difference as between it and the whole body of individuals or classes within the state. The statute, then, instead of being a general law of universal application, really becomes identical in effect with a special statute. The statute here under consideration is special and it occupies the same position as any so-called general law which, instead of applying universally, applies only as to some class founded upon some constitutional or natural or intrinsic distinction. Where the act is based upon such a difference for which a substantial reason may be supplied, the legislature has the undoubted right to enact a law which shall be applicable to only one class. (*Title etc. Restoration Co.* v. *Kerrigan,* 150 Cal. 289 [119 Am. St. Rep. 199, 8 L. R. A. (N. S.) 682, 88 Pac. 356] ; *Darcy* v. *Mayor of San Jose,* 104 Cal. 642 [38 Pac. 500] ; *Pasadena* v. *Stimson,* 91 Cal. 238 [27 Pac. 604].)

It has been intimated that the reason for the enactment of the statute within the intent of the legislature may have been, first, that of facilitating the dispatch of business of the courts to the end that justice might be speedily administered; and, secondly, that of conveniencing witnesses, litigants and lawyers in the locality to be served. No other reasons for the passage of such a law as the one before the court are readily observable. True, there may be other reasons, but none other have been suggested by learned counsel, nor has this court been able to discover them; hence it may be fair to assume that they do not exist. It is feared, however, that the first reason is not altogether sound. The fact that litigants may have only a short distance to travel for the purpose of attending court does not enable the court to handle the business before it more expeditiously. The court can transact exactly the same amount of business regardless of the inconvenience, if any, suffered by the litigants, witnesses and lawyers in reaching the courthouse. But it is undoubtedly true that a proximity to the courthouse by those who may have litigation would be a great accommodation and a great saving of time, so far as they may be personally concerned. The evident purpose of the act was to provide for a city having a population of fifty thousand or more people whose city hall was so far distant from the site of the county courthouse that, considering transportation facilities and congestion of traffic, the necessity of the inhabitants of such city

attending to any business with the courts worked a considerable inconvenience if not an absolute hardship upon them. Just why, in effect, such cities in Los Angeles County only should be singled out for such a favor is not apparent. Other counties in the state either now having, or likely in the near future to have, similar conditions presented very probably would have just cause for complaint because of such partiality shown by the legislative act. Their needs might be just as great and their people just as much convenienced by a statute including them therein, with similar rights and privileges, as would the cities provided for by the statute in question. Naturally the inquiry arises why were they not included in the act. Is there any reason why every city in the state having a population of fifty thousand or more people and whose city hall is located fifteen miles distant from the site of the county courthouse should not receive identical treatment as by this statute would be accorded such cities within the county of Los Angeles? So far as this court is able to determine, no sufficient reason exists therefor.

The final question is whether or not a general law could have been made applicable. It is plain that the attempted classification is not one authorized by the constitution. The fact that a large number of citizens of the state might be greatly accommodated by reason of having a superior court in their vicinity presents no satisfactory reason for classification denominated either natural or intrinsic. Certainly every other community in the state, whether composed of fifty thousand people or five hundred people, would be proportionately convenienced by the same arrangement. The attempted classification is not real; it is purely arbitrary; and not based upon any substantial ground. In addition thereto, it would seem that the constitutional provision (sec. 21, art. I), which forbids that any citizen or class of citizens shall be granted privileges which, upon the same terms, shall not be granted to all citizens, is violated. In the case of *Mordecai* v. *Board of Supervisors*, 183 Cal. 434 [192 Pac. 40], the court was considering the constitutionality of an act which provided for the formation of irrigation districts in all counties of the state except in counties which had adopted a freeholders' charter prior to June 4, 1915. It appeared that there were but two counties in the state which had

adopted such a charter. In ruling that the statute was not uniform in its operation, the court used the following language: "The many times reiterated statement of our decisions is that, while the requirement that a general law must have a uniform application does not mean that it must have a universal operation, and it is valid if it applies alike to all persons or objects within a class—or, what is the same thing, there is excepted from its operation a class—founded upon some 'natural, intrinsic, or constitutional distinction,' yet if the statute operates only upon a class, or there is excepted from its operation a class, not founded upon a 'natural, intrinsic, or constitutional distinction,' its operation is not uniform, and it is discriminatory legislation of the sort which the Constitution purposed to prohibit and is invalid." Touching upon the point that the act there in question granted to the citizens of some of the counties privileges which were withheld from citizens of other counties, the court said: "It has been frequently and truly said that the purpose of the constitutional mandate was to prevent special privileges or immunities being granted to a class. In fact, the provision of the Constitution for uniformity of operation is closely connected with its further provision (art. I, sec. 21) expressly prohibiting the granting of special privileges or immunities. Now, if the California Irrigation Act be considered as a privilege, what reason is there why the inhabitants and property owners of Los Angeles and San Bernardino should not enjoy that privilege when those within other counties may do so? On the other hand, if the act be considered a burden, why should those within those two counties be immune from it when the rest of the state is subject to it?"

Paraphrasing the language just quoted, the following question is also pertinent: If the establishment of a superior court in a city of fifty thousand, located fifteen miles or more from the county seat of the county of Los Angeles, be considered as a privilege, what reason is there why cities of the same size and similarly located in other counties of the state should not enjoy that privilege when such cities in Los Angeles County may do so? And, as is said in the Mordecai case, we can see no sufficient anwer to these questions, or to the objection involved in them that the exception from the applicability of the act of other counties in the state destroys

the uniform operation of the act. And again, as is said in the Marsh case, *supra,* the question remaining is "whether or not the subject of the act is one of those as to which special and local legislation is inhibited by the constitution." The presumption is that legislative power has been rightfully exercised; and while great regard is due to the expressed will of the legislature, a still greater deference must be accorded by the courts to the constitutional mandate, which all public officers are sworn to support. (*People v. Central Pac. R. R. Co.,* 43 Cal. 398.) In the very nature of things, special laws could not have a uniform operation in the sense that they really would or could apply equally as to every individual in the state. So far as concerns the matter here, the constitution only requires that special laws shall not be passed where a general law may be made applicable. Although the authorities throughout the several jurisdictions of the United States are not entirely harmonious with reference to the force and the effect to be given to the legislative determination of the question as to whether or not a general law could be enacted in a given situation, the weight of authority, including adjudicated cases in California, is to the effect that the decision rests largely in the discretion of the legislature and that the courts are not warranted in interfering with the conclusion expressed in the legislative act unless there appears a positive disregard of the fundamental law.

The case of *People v. Mullender,* 132 Cal. 217 [64 Pac. 299], is illustrative of the point. Under the act of March 18, 1889 (Stats. 1889, p. 305), a board of state harbor commissioners was established for the bay of San Diego and the question of the legality of that act was before the court for its determination. The court said: "That the act here in question is both local and special is conceded. But that is not conclusive. The language of said paragraph (referring to the constitutional provision) plainly implies that there are or may be cases where a local or special act may be wise, salutary, and appropriate, and in no wise promotive of those evils which result from a general and indiscriminate resort to local and special legislation. The Constitution submits the question, whether a general law can be made applicable in any given case, to the judgment of the legislature, to be determined in the light of the evils intended to be avoided,

and with its determination upon that question we may not interfere, unless the disregard of the constitutional requirement is clear and palpable. . . . '' In the case of *Bruch* v. *Colombet*, 104 Cal. 352 [38 Pac. 45], it is said: "No absolute, inflexible rule has ever been formulated, and probably never will be, by which to determine what departure from uniformity is permissible, and what will be fatal. The courts must determine each case as it arises, presuming in favor of the rightful exercise of the legislative power. Yet the inhibition should be enforced unless there is discoverable some reasonable ground for a distinction." And see, also, to the same effect: *People* v. *Sacramento Drainage District*, 155 Cal. 373 [103 Pac. 207]; *Wheeler* v. *Herbert*, 152 Cal. 224 [92 Pac. 353]; *Title Restoration Co.* v. *Kerrigan*, 150 Cal. 298 [119 Am. St. Rep. 199, 8 L. R. A. (N. S.) 682, 88 Pac. 356]; *Ex parte King*, 157 Cal. 161 [106 Pac. 578]; *Matter of Burke*, 160 Cal. 300 [116 Pac. 755]; *People* v. *Casa Co.*, 35 Cal. App. 194 [169 Pac. 454].

It will, however, be noted that the courts have not abdicated the power of final determination. The right to investigate and to review the facts is still retained, and where it is shown that no sufficient reason appears for the implied declaration by the legislature that in the passage of a special law a general law could not have been made applicable, the courts unhesitatingly exercise their rightful prerogative of pronouncing the statute unconstitutional. The language of the statute affecting the point is "that *in counties of the first class* at least one session of the superior court shall be held in each city of said county containing a population of fifty thousand," etc. It is obvious that the statute might have provided that "in each of the counties of this state" a session of the superior court shall be held, etc. The possibility of drawing a law which would be general in its nature, instead of a special and local law, as the statute now presents itself, is demonstrated by another clause of the same statute, which provides that "whenever such judge or judges (of the superior court) deem it necessary or advisable" they may "direct that the court be held or continued at any other place in the city and county, county, city, or town not less than one hundred twenty miles distant from the county seat." That particular part of the statute is general in its nature. It operates as to each county and as to the superior

court located within each county of the state. There is no reason why the act in question should not have done likewise. As is said in the case of *Marsh* v. *Hanley,* 111 Cal. 372 [43 Pac. 975]: "It is not a matter for argument or speculation, therefore, whether this is a case in which a general law could be made applicable. This act, by its terms shows that such is the case. . . ."

In the case of *Coulter* v. *Routt County,* 9 Colo. 258 [11 Pac. 199], a state of facts arising from circumstances similar to those here, with a constitutional provision identical with ours, was under consideration. The Colorado court held the act unconstitutional and, in passing upon the question whether or not a general law could have been made applicable, among other things, said: "That the permanent location for the holding of the district courts in the counties of the state can be fixed by general laws has been demonstrated by the acts of the legislature itself, during a long term of years, which acts overcome all presumptions that a departure is necessary in the case of a single county." The same thing is evident here. There was a clear and palpable disregard of the constitutional requirement. The conclusion is therefore reached by this court that that part of the act here under consideration is special and local; that it is not uniform in its operation; that is confers special privileges upon a class of citizens, which, upon the same terms, are not granted to all citizens, and that a general law could have been made applicable.

It follows that the petitioner is entitled to be discharged. It is so ordered.

Conrey, P. J., and Curtis, J., concurred.